# CITY OF KIRKSVILLE, Appellant, v. WALKER D. HINES and WABASH RAILROAD COMPANY.

### Division One, December 2, 1920.

1. **STREET CROSSING:** Location by City. A city cannot determine the particular point at which one of its streets is to cross an existing railroad track, nor can it by the process of condemnation extend an existing street across a railroad track until the site of the crossing is first determined by the Public Service Commission, nor can it do so subject to the approval of the Commission, for the Act of 1913 (Laws 1913, Sub-div. 2, Sec. 50, p. 589) invests the Commission with exclusive power to determine the particular point of crossing by a street across a railroad.

2. ———: ———: **Power of Commission.** The Public Service Commission has no power of eminent domain, or authority to direct or control cities in the exercise of the power, or to determine questions relating to the necessity, expediency or propriety of establishing or extending streets across railroad tracks; but it does have power to determine "the particular point of crossing of the crossing" of a railroad by a proposed street, and until it determines that point the city cannot avail itself of its statutory powers of extending a street across a railroad.

3. ———: ———: **Re-enacted Section 10626: Consistent.** Subdivision 2 of Section 50 of the Public Service Act of 1913, empowering the Public Service ·Commission to determine the particular point at which an existing street may be extended across a railroad track, is not inconsistent with new Section 10626, reenacted in the same year 1913, and requiring a railroad corporation to construct and maintain at its own expense good and sufficient crossings where its railroad crosses a street in a village or a city of the third class, and therefore said Section 10626 is no exception to the provisions of said Sub-division 2.

Appeal from Adair Circuit Court.—*Hon. James A. Cooley,* Judge.

AFFIRMED.

*A. Doneghy* for appellant.

(1) The court erred in sustaining the demurrer, for the reason that Sec. 9258, R. S. 1909, confers express power on the city to make such extension, and Sections 9261 to 9275 prescribe a complete scheme for the condemnation, and said sections comprise authority and the only authority in the statutes whereby private property may be taken or damaged by a city of the third class for public purposes. (a) And Section 9262 gives the circuit courts exclusive jurisdiction to hear and determine all such condemnation proceedings. (b) Nowhere, in the Public Service Act, and in no other statute, is the Public Service Commission given authority to hear and determine a condemnation proceeding. And nowhere is said Commission given authority to impanel a jury or appoint commissioners for such purposes as is provided by Section 21, Article 2, of the Constitution. (c) And if the Legislature by the passage of the Act of 1913, sec. 50, page 589, and Section 1, page 696, Laws 1913, intended to confer on the Public Service Commission exclusive jurisdiction to say whether an underground crossing should or should not be built, still it would not take away from the circuit courts the power to hear a condemnation case for such purpose. The city could obtain the permission of said Commission after the termination of the court proceedings. And it is no concern of the defendants as to which course the city will elect to pursue, as their land cannot be taken until paid for, and then it can be used for no other purpose than that for which it was condemned. State ex rel. v. Williams, 227 Mo. 32. (2) The court erred in dismissing the case for the reason that Section 9258, and Section 9261 confer on the city council authority to determine when a street shall be opened or extended, and Section 1, Laws 1913, page 696, gives the council of cities of the third class the exclusive right to order an underground crossing when the conditions prescribed by the act exist,

to-wit: when a public street crosses the line of any railroad at a point where the grade of such railroad is ten feet or more higher or lower than the surface of such street. (3) The Public Service Commission not only has not the exclusive jurisdiction in such cases, but, on the contrary, has no jurisdiction at all. The Public Service Commission Act was approved on the 17th day of March, 1913. See Laws 1913, page 651. Three days later the same Legislature amended an act and wrote therein the words, "cities of the third class," and provided that when a public street or road crosses the line of any railroad at a point where the grade of such railroad is ten feet or more higher or lower than the surface of such street or road, such railroad company shall be required by the proper authority of said city of the third class to construct a safe, convenient and suitable passage and roadway under or across such railroad for the use of the traveling public. Laws 1913, p. 696. The two Acts above referred to were each passed by the same Legislature at the same term, and it is our duty to give effect to each if possible, and not until we find it impossible to read them together without conflict are we called on to apply the rule that where two statutes are in conflict the latter statute shall prevail, and we think there is no difficulty in reconciling the two. The Public Service Commission Act, sec. 50, is a general act, and, unless restrained by some special act, is broad enough to include all crossings of roads or streets by railroads. The Act found at page 696 is a special act and applies only to specific conditions, and was, under well recognized rules of construction, intended, when the specific conditions therein defined existed, to take the same out of the provisions of the general act. Sutherland, Stat. Con., sec. 153, p. 206, and secs. 157, 158, 159; Musick v. Railroad, 114 Mo. 314; State v. DeBar, 58 Mo. 398; Payner v. Musick, 114 Mo. 637; State v. Green, 24 Mo. App. 231; Gilkerson v. Railroad, 222 Mo. 173.

*N. S. Brown, L. H. Strasser,* and *Higbee & Mills* for respondents.

(1) The petition failing to aver that the Public Service Commission has ordered a crossing to be put in across the defendant's railroad, the court properly sustained the demurrer on the ground that it had no jurisdiction in the premises. State ex rel. v. Pub. Service Com., 271 Mo. 270. (2) The petition does not state facts sufficient to constitute a cause of action. It does not aver that the Public Service Commission has ordered the Wabash Railroad or the Director General to construct a crossing at the point in question. Appellant admits such order has not been made. Such order is a condition precedent to the condemnation of a right of way for the proposed crossing. (3) The Public Service Commission Act, Laws 1913, p. 557, Section 50, p. 589, gave the Public Service Commission exclusive jurisdiction to determine and prescribe the manner, including the particular point of crossing, and the terms of installation of a street by a railroad or *vice versa.* This includes subgrade, grade, and overhead crossings. State ex rel. v. Public Service Com., 271 Mo. 283. This necessarily repealed Sec. 10626, R. S. 1909, and other inconsistent acts. (4) Sec. 10626, having been repealed by necessary implication, the Act of March 20, 1913, Laws 1913, p. 696, purporting to repeal Section 10626, and to enact a new section in lieu thereof, is nugatory. It was an attempt to revive and amend the repealed section by making it applicable to villages and cities of the third class. State ex rel. v. Benton, 51 N. W. 143; Lampkin v. Pike, 115 Ga. 827; Draper v. Fallay, 33 Ind. 465; Wall v. Garrison, 11 Col. 515; Stingle v. Nevel, 9 Ore. 62; Blackmore v. Dolan, 50 Ind. 194. (5) If the Act of March 20, 1913, were a valid enactment it is to be read as a part of the earlier statute and not of the re-enactment, and does not repeal Section 50 of the Public Service Commission Act. Endlich on Int. Statutes, 194; Lewis Sutherland, Stat. Constr., sec. 273.

RAGLAND, C.—This is a condemnation proceeding instituted by the City of Kirksville in furtherance of its effort to extend one of its streets across the right of way and tracks of the defendant railroad company. The petition, which was filed in the Circuit Court of Adair County December 15, 1919, is as follows:

"To the Honorable Circuit Court of Adair County, Missouri. Our petitioner, in the above entitled cause, respectfully shows to the court and alleges that the defendant, Wabash Railway Company, is a railroad corporation, and has a principal business office at the City of Saint Louis, Missouri, and owns a line of railroad running north and south through the City of Kirksville, which said line of railroad, and right of way, runs across and over the following described lands situated in said city, to-wit: Beginning at a point in said city where the north line of Normal Avenue · (a public highway or street of said city formerly called, and shown on the plat of Dodson's Addition on file in the office of the Recorder of Deeds of Adair County, Missouri, Water Street), intersects the east line of the defendant Wabash Railway Company's right of way, and running from thence west to the east line of Fourth Street, and from thence south to a point in line with the south line of said Normal Avenue (formerly called Water Street), and from thence east to the east line of said railway company's right of way, and from thence in a northeasterly direction to the place of beginning, and said lands are owned by said defendant, Wabash Railway Company; that said Normal Avenue, formerly called Water Street, is a public highway of said City of Kirksville, and now is and has been used as a public highway for many years last past both east and west of said described lands; that defendant, Walker D. Hines, is the Director General of Railroads and is in control of said line of railroad and of said railway company.

"Your petitioner further states that where the said Normal Avenue crosses the above described part of de-

fendant railway company's right of way. and railroad
track the grade of said railroad track is ten feet or
more, to-wit, fourteen feet, higher than the surface of
said Normal Avenue; that on, to-wit, the 18th day of
August, 1919, the council of said City of Kirksville did
duly pass and the mayor did duly approve and sign an
ordinance numbered 3486 and which said ordinance is
now in full force and effect, and wherein in and by said
ordinance the above described lands were condemned
for the purpose of extending said Normal Avenue across
the same and under the track of said railway company
for the purpose of public travel, and wherein by said
ordinance it was provided that part of said Normal Ave-
nue so made by extension across said lands or right
of way be graded to the grade established by said ordi-
nance, and said ordinance further provided for and de-
fined the limits within which private property should be
assessed to pay damages for such taking or damaging
of property for public purposes, a duly certified copy of
which said ordinance, is herewith filed, and the limits
therein defined are as follows: . . . And it was
further provided by said ordinance that the city attor-
ney of said city begin the necessary proceedings to con-
demn said property and to ascertain the benefits and
damages by reason of such taking or damaging of
private property. . . . Wherefore your petitioner
prays the appointment of three disinterested commis-
sioners, freeholders of Adair County, Missouri, to
assess the damage. . . ."

The defendants appeared and demurred to the peti-
tion on the ground "that this court has no jurisdiction
of the subject of this action, because exclusive jurisdic-
tion thereof is vested in the Public Service Commission
of the State of Missouri."

The demurrer was sustained and final judgment
rendered dismissing the cause. From that judgment
plaintiff appeals.

I. The City of Kirksville is a city of the third class. Under Section 9261, Revised Statutes 1909, it can take private property for public use "for the purpose of establishing, opening, widening, extending or altering any street." The manner in which it may do so is prescribed by Sections 9262 and following. Under the broad powers so delegated to it, it can determine for itself, in the first instance, the necessity, expediency and propriety of exercising eminent domain in opening or extending its streets. Acting in good faith, it may, generally speaking, locate and establish streets whenever and wherever it elects and take private property within their boundaries for the use thereof, provided such use be in fact a public one. [Kansas City v. Hyde, 196 Mo. 498, 506; Simpson v. Kansas City, 111 Mo. 237.] There is, however, at least one limitation upon the power of appellant and other municipalities in this State to determine the location of their streets; they cannot say where they shall cross railroads. Sub-section 2 of Section 50 of the Public Service Commission Law (Laws 1913, p. 589) provides: "The commission shall have the exclusive power to determine . . . the particular point of crossing . . . of each crossing . . . of a street by a railroad or *vice versa*." The appellant could not, therefore, determine the particular point of crossing of the crossing of defendants' railroad by its proposed street extension. It could not do so even subject to the approval or consent of the Public Service Commission, because it had no power at all in the premises. The commission is invested with the *exclusive* power.

According to the petition plaintiff seeks to condemn, for the purpose of extending one of its streets, a specific parcel of land, therein described, occupied by defendants' right of way and railroad tracks. The petition does not allege that such parcel of land is the *locus* of the particular point of crossing of the crossing of defend-

*Street Across Railroad.*

ants' railroad by the proposed street extension as determined by the Public Service Commission. If a municipality has no authority to determine the place of the crossing of a railroad by a street that it proposes to open or extend, obviously it cannot appropriate land for such a crossing unless and until the *situs* is determined by the tribunal invested with the power so to do. Such prior determination is, therefore, a condition precedent to the right to condemn. As it nowhere appears from the petition that the land therein described and which is sought to be condemned is at a place that has been determined upon and fixed by the Public Service Commission as the point of crossing of the railroad by the proposed street extension, the petition does not state a cause of action.

As previously stated, the ground of the demurrer was "that the court has no jurisdiction of the subject of this action because exclusive jurisdiction thereof is vested in the Public Service Commission." But evidently the court did not sustain the demurrer because it had no jurisdiction of the subject of the action, but because the petition failed to state a cause of action. The judgment recites that "the plaintiff refuses to amend its petition, but elects to stand thereon." In this particular cause the court did not have jurisdiction to grant the relief prayed for simply because facts entitling plaintiff to such relief were not stated in the petition and not because it had no jurisdiction of the subject-matter. There is nothing in the Public Service Commission Law to which our attention has been called, certainly nothing in Section 50 thereof cited by counsel, that warrants the conclusion that the Commission is in any sense invested with the power of eminent domain, or with authority to direct or control cities and other municipalities in the exercise of that power in establishing and opening streets. Questions relating to the necessity, expediency or propriety of establishing and extending streets and highways, *even when they cross railroads,*

are not matters for its consideration. That power is lodged elsewhere. Speaking to the purposes of this case only, the Commission has the exclusive power, and no other, to determine the "particular point of crossing" of the crossing of a railroad by a proposed street. This is a police power to be exercised solely with a view to the public safety and is a limitation on the power of eminent domain delegated to municipalities. After the particular point of crossing has been determined by the Commission, a city of the third class has full authority to condemn the *locus* for a street and the circuit court has exclusive original jurisdiction of the proceeding, just as before the passage of the Public Service Commission Act.

II. When the Public Service Commission Statute was enacted, Section 10626, Revised Statutes 1909, was in force. It required railroad corporations to construct and maintain (at their own expense) good and sufficient crossings where their railroads crossed public roads or town streets, specified the manner in which grade crossings should be constructed and provided for a separation of grades under certain conditions. Section 50 of the Public Service Commission Act gives the Commission the exclusive power not only to determine the particular point of crossing, but to determine and prescribe the manner of constructing crossings and to apportion the expense thereof. Section 139 of the Act declares that its provisions were not intended to repeal any law then in force, unless in direct conflict therewith, but to be supplemental to such laws. At the same session at which it passed the Public Service Commission Law, the Legislature repealed Section 10626 and enacted a new section in lieu thereof, in substantially the same language as the old, to be known as Section 10626 (Laws 1913, p. 696). By the new section the provisions of the old were made applicable to crossings in villages and cities of the third class in addition to those mentioned in the old one. This was practically the only change effected by the re-

enactment. It is the contention of appellant, as we understand it, that where the provisions of said Section 50 conflict with those of Section 10626, the latter must control and be given effect, because they deal with particular subjects and specific conditions while those of the former are general in character. If this contention be sound, as to which we express no opinion, it would avail appellant nothing in this case. None of the provisions of Section 10626 is in any respect inconsistent with those of Section 50 conferring upon the Public Service Commission the exclusive power to determine the particular point of crossing. What construction should be given these statutes with reference to their several provisions dealing with the manner of constructing crossings and the expense incident thereto can be determined only in a case involving such questions.

The judgment of the circuit court was for the right party and should be affirmed. It is so ordered.

*Brown* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.