THE STATE EX REL. E. W. JENKINS, Secretary of Legislative Board of Brotherhood of Railroad Trainmen and State Representative, Appellant, v. THOMAS J. BROWN ET AL., Members of and Composing Public Service Commission of Missouri.—19 S. W. (2d) 483, 484.

Division One, July 30, 1929.

*D. W. Peters* for appellant.

*D. D. McDonald* and *H. O. Harrawood* for respondents.

ATWOOD, P. J.—We adopt the following statement of the case submitted by appellant and approved by respondents:

"The 53rd General Assembly of Missouri enacted what is known as the Clearance Law which may be found at pages 323 and 324, Laws of Missouri, 1925, the first section of which prescribed a minimum clearance of twenty-two feet for permanent structures erected over the tracks of any railroad unless the Public Service Commission of Missouri found that such construction was impracticable, and the second section of which provided that said 'Commission should promulgate uniform rules governing the construction of structures over or contiguous to any railroad tracks; thereafter, when the law became effective said Public Service Commission did promulgate uniform rules pursuant to the provisions of the act aforesaid, which said rules became the Commission's General Order No. 24; this order, among other things, provided that no structure should be erected, or any railroad track laid wherein any such structure would be closer to the center of said track than eight feet and six inches. This act became effective on the 9th day of July, 1925, and said General Order was promulgated during the latter part of that month, the exact date not appearing in the record.

"The Wabash Railway Company, Firestone Tire & Rubber Company, J. L. Mueller Furnace Company and the Art Mosaic & Tile Company, filed a joint application before the Public Service Commission on the 9th day of July, 1927, requesting permission on behalf of these industries to construct a privately owned switch track, commencing at a point approximately 430 feet east of the easterly line of Boyle Avenue and extending in a westerly direction approximately 285 feet, a portion of which proposed track would have the lateral clearance of between eight feet and four inches and seven feet and ten inches. That portion of the proposed track where the lateral clearance will be as stated above, is on the north side thereof, and extends from the point where the construction of said switch track commences for a distance of about ten feet westerly; it appears that the Linde Air Products Company own the ground on the north side of the proposed switch track, and at the point where the clearance is as above stated, have a steel tank, the base of which is less than three feet from the northerly line of the property owned

by the applicants for the construction proposed. On the south side of the proposed switch track, there are two other privately owned switch tracks, each of which have clearances less than that prescribed by law and the order of the Commission.

"Notice of the application for this permission was given to E. W. Jenkins, Secretary and State Legislative Representative of the Brotherhood of Railroad Trainmen, who was by the Commission, duly allowed to intervene in this cause, and file a protest, against the granting of the permission requested by the applicants. Upon a hearing, it was disclosed that the industries seeking the permit to construct the switch track aforesaid, had acquired this property and establish themselves thereon, possibly a little more than one year prior to the date on which the application for the permit sought, was filed, and a long time after the effective date of the Clearance Act and the issuance of the Commission's General Order No. 24 pursuant thereto. It further appeared that the applicants 'had exhausted their resources in trying to secure from the owner of the land at the point where the proposed switch track would have less clearance than that prescribed by the Commission's General Order sufficient to enable them to construct the track with the required clearance. It. was not possible to secure additional space on the south of the track for the reason that other tracks already constructed prior to the enactment of the Clearance Law had taken up all available space and neither of them had the clearance which the present order of the Commission required.

"The protestant was allowed time in which to send an engineer to examine the possibilities of constructing this track in conformity with the General Order of the Commission, and his report shows that such construction could not be made.

"In due course the Commission submitted its report and order authorizing the applicants to proceed with the construction of the said switch track with the clearances proposed by them. The intervener filed his motion for a rehearing in due time, which was by the Commission overruled. Thereafter and within the time prescribed by law he filed his petition for a writ of certiorari to the Circuit Court of Cole County, and in due course said writ was issued and the record of the proceedings before the Commission brought before that court. Upon a trial in said Circuit Court of Cole County the ruling of the Commission was sustained. Thereafter, the intervener filed his motion for a rehearing or new trial within the time prescribed by law, which was by the court overruled and intervener then perfected his appeal to this court."

Respondent's order in question bears date of August 17, 1927, and is as follows:

"1. That the Wabash Railway Company, Firestone Tire & Rubber Company, J. L. Mueller Furnace Company and Art Mosaic & Tile Company be and they hereby are authorized to construct, operate and maintain a spur-switch track at the location and with the horizontal clearances shown on Applicant's Exhibit 'A' provided that suitable warning signs be erected directing attention to insufficient clearance."

"2. That this order take effect ten days from this date and that the Secretary of the Commission forthwith serve certified copy of this order on each of the parties interested herein."

Appellant makes but one assignment of error which is as follows:

"The court erred in sustaining the Commission's order granting to the applicants permission to construct the switch track described in their application, for the reason that the evidence failed to disclose a state of facts warranting the granting of a permit to construct said track with less lateral clearance than that prescribed by law, and the Commission's General Order No. 24."

The only contention made in appellant's brief is that "the applicants were not entitled to a permit to construct the switch track described by them in their application, with less than the lateral clearance prescribed in the Commission's General Order No. 24, for the reason that they acquired the property and established themselves in business thereon, a long time after the Clearance Law and the General Order No. 24 issued pursuant thereto by the Public Service Commission of Missouri, became effective." The authorities cited in support of this contention are Story's Equity Jurisprudence (14 Ed.) par. 98 et seq.; and Pomeroy's Equity Jurisprudence (4 Ed.) pars. 397-404.

We do not think this contention can be sustained. The Public Service Commission is an administrative body and not a court. [State ex rel. v. Public Service Commission, 259 S. W. (Mo. Sup.) 445, 477.] It has no power to declare or enforce any principle of law or equity. [Lusk v. Atkinson, 268 Mo. 109, 117.] It must take the facts as it finds them and it can promulgate only such orders as are strictly within the powers delegated to it by law. [Public Service Commission v. Frisco Railway, 301 Mo. 157, 165.] Its orders are subject to a statutory writ of review issuable from the circuit court, and upon such review the sole matter for determination is whether or not the order is reasonable and lawful. [Sec. 10522, R. S. 1919.] A fair interpretation of this clearance statute indicates that conformity therewith can in no sense be made contingent upon the application of principles of equity, such as appellant suggests. The act concerns itself with the clearance, both vertical and horizontal, of structures adjacent to railroad tracks, and it applies only to structures thereafter erected. It is of no consequence in this case when appellants

acquired these properties or established themselves thereon. Their amenability to the statute is determined by the time when they undertook to create a condition which the statute is designed to regulate, and not by the time when they acquired their properties.

What we have just said in effect overrules the single contention made by appellant, but we go further. An examination of the statute discloses that the General Assembly never intended that the required clearance be measured by an absolute figure unchangeable as the laws of the Medes and Persians. The purpose of reasonable flexibility appears in the discretion vested in the Public Service Commission. Of course, such discretion means a reasonable discretion, but the fact remains that it is so vested. As to vertical clearance, the plain language of Section One is that the specified "twenty-two feet in the clear" may be departed from "in cases in which the Public Service Commission finds that such construction it impracticable;" and as to horizontal clearance dealt with in Section Two, which is the only ground of clearance involved in this case, no figure is specified. The statute simply makes it, "the duty of the Public Service Commission to promulgate uniform rules governing clearances in the construction of such structures." But the discretion of that body does not end there, for Section Two further provides that "after the promulgation of uniform rules as aforesaid by said public service commission, it shall not be necessary to procure permission from said Public Service Commission to erect any structure aforesaid that is erected in conformity to such rule," etc., thus indicating that the commission still has power to hear and grant, in the exercise of a reasonable discretion, applications for permission to vary from the letter of the uniform rules so promulgated. In the instant case the facts are not in dispute, and the record shows that applicants have made diligent effort to procure sufficient right of way to construct the proposed switch and allow all the clearance required by General Order No. 24, which was promulgated by respondents in pursuance of the clearance statute; that the length of the proposed switch is between 350 and 400 feet and the clearance afforded in all respects conforms to the requirements of this general order except that for a distance of ten feet on the north side of the switch as it leaves the lead it is nearer an eight-foot wire mesh fence on adjoining property belonging to the Linde Air Products Company by a distance of two to eight inches than the terms of said general order provide; that the Linde Air Products Company has conveyed some of its ground to appellants for right of way, but refuses, for any consideration, to convey any more for the reason that for said space of ten feet said wire fence, which is necessary for the protection of their property, is now so close to the foundation of one of their large steel storage tanks that it cannot

be moved closer to the tank without interfering with the proper care and preservation of the tank; that operations over this switch track will be at a slow rate of speed, not to exceed five or six miles per hour, and will be conducted and supervised from the south side of the track where there is ample room; that it will not be necessary for any employees to go on the north side of the track; and respondents' order provides that "suitable warning signs be erected directing attention to insufficient clearance."

The order in question is well sustained by substantial evidence and it is not unreasonable or unlawful. The judgment of the circuit court is affirmed. All concur.