[Civ. No. 4676.  Third Appellate District.—October 4, 1932.]

GREAT NORTHERN RAILWAY COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF MODOC COUNTY et al., Respondents.

Earl & Hall and Chaffee E. Hall for Petitioner.

W. C. Van Emon and A. K. Wylie for Respondents.

PRESTON, P. J.—The petitioner seeks to prohibit the Superior Court of Modoc County from proceeding to try an action in eminent domain which was instituted by the Tionesta Logging Railway Company to condemn an easement to be used for a crossing of the track of the Great Northern Railway Company. It is asserted the court lacks jurisdiction to try the condemnation suit for the reason that the order of the Railroad Commission was not first procured determining the location and conditions incident to the crossing as required by section 43, subdivision (b), of the Public Utilities Act of California. A motion to dismiss the action on that ground was denied.

The complaint in the condemnation suit alleges the incorporation of the Great Northern Railway Company and that it owns and operates a railroad and necessary equipment for the transportation of passengers and freight in California.

The route of this railroad track through Modoc County is described. It is also alleged the Tionesta Logging Railway Company is incorporated and is engaged in a logging and lumber business in the state of California and possesses a right of way for its railway track in Modoc County; that it is desirous of acquiring an easement for its railroad track to cross the right of way of the Great Northern Railway Company in Modoc County at a point which is particularly described to be used in common with the last-mentioned company. The complaint recites the necessary elements of an ordinary condemnation suit except that it is not alleged that the order of the Railroad Commission was first procured consenting to the crossing or determining its location or the conditions incident thereto. The defendant's motion to dismiss the condemnation suit for lack of jurisdiction was denied. This petition for a writ of prohibition was then instituted.

The only question which is involved in this proceeding is whether the superior court is without jurisdiction to try the condemnation suit until the Railroad Commission first determines the location and conditions incident to the proposed crossing and authorizes the same, as provided by subdivision (b) of section 43 of the Public Utilities Act of California.

Section 1238 of the Code of Civil Procedure provides that "the right of eminent domain may be exercised in b⌐half of the following public uses . . . 11. Railroads, roads and flumes for quarrying, logging or lumbering purposes".

The Tionesta Logging Railway Company contends it is entitled under the provisions of article I, section 14, of the Constitution of California, to maintain an action in eminent domain in the superior court of the county where the land is located, to condemn an easement for its railroad to cross the petitioner's track, and have the damages incident thereto assessed by the court or a jury, subject to a subsequent authorization therefor and order of the Railroad Commission determining the location and conditions attending the proposed crossing pursuant to subdivision (b) of section 43 of the Public Utilities Act of California.

The logging company further asserts that it does not become a common carrier subject to the regulation of the Railroad Commission until it has acquired the property for

its right of way and a decree of condemnation therefor has been duly made and entered. This claim is based upon the last paragraph of section 14 of article I of the Constitution, which provides: ''The taking of private property for a railroad . . . for logging or lumbering shall be deemed a taking for a public use, and any person, firm, company or corporation taking private property under the law of eminent domain for such purposes shall thereupon and thereby become a common carrier.''

It will be observed, however, that the taking of private property in eminent domain for a railroad right of way is not involved in this proceeding. We must assume the logging company is possessed of a right of way and that it is an incorporated logging railway company. All that is involved in this proceeding is the privilege of procuring an easement for one railroad track to cross the right of way of another railroad. We are of the opinion that the desired easement for a railroad crossing is a mere incident to the property rights of the logging railway company, and that the mere lack of title to this easement does not exempt the logging company from regulation by the Railroad Commission. ■ The allegations of the complaint in the condemnation suit, and of the petition in this proceeding are sufficient to constitute it a common carrier. It is only necessary that it should be equipped so as to be able to transport passengers or property, to be deemed to be a common carrier. ■ Conceding for the sake of argument that the courts still retain concurrent jurisdiction of eminent domain proceedings to condemn an easement for one railroad to cross the track of another railroad, where merely public utility property is taken as distinguished from property of a private individual, still, we are of the opinion that the procuring of an order of the Railroad Commission pursuant to subdivision (b), section 43, of the Public Utilities Act, determining the location and conditions incident to the proposed crossing, is a prerequisite to the right to maintain such eminent domain proceeding.

Certainly orderly procedure and justice would seem to demand that the order of the Railroad Commission consenting to the crossing determining the exact location and fixing the terms and conditions incident to the grant should become a prerequisite to the maintaining of an action in the state

courts to condemn the easement for railroad crossing purposes. For instance it is apparent that since the commission has the exclusive power to locate the point of crossing and determine the manner, terms and conditions incident to the crossing, it might become unjust and idle to first condemn a particular strip of land as a crossing or attempt to fix the compensation therefor. It is entirely possible the commission in the exercise of wise discretion may subsequently determine, in the interest of justice, that an entirely different location of the proposed crossing from that which was condemned, is least detrimental to the owner and best adapted to the interest of both parties. The commission may, in the exercise of justice, determine that the best interests of the public and of the parties involved demand an overhead or an under track crossing. Other reasonable terms and conditions may be imposed by the commission which were not contemplated in the awarding of compensation at the trial. Such contrary action on the part of the commission would result in nullifying the decree of condemnation. The expense and time of trial would become useless.

Moreover, under the provisions of article XII, section 23a, of the Constitution, and subdivisions (b) and (c) of section 43 of the Public Utilities Act, the Railroad Commission has jurisdiction to authorize one railroad to cross the tracks of another railroad, to determine the location of such crossing and the terms and conditions incident thereto, and to assess the compensation to be paid for the taking of any property of a public utility for such purpose, and to make the final order of condemnation therefor.

Article XII, section 23a, of the Constitution provides: "The Railroad Commission shall have and exercise such power and jurisdiction as shall be conferred upon it by the legislature to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings by the state, or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district, and the right of the legislature to confer such powers upon the Railroad Commission is hereby declared to be plenary and to be unlimited by any provision of this Constitution."

Pursuant to this authorization of the Constitution, subdivision (b) of section 43 of the Public Utilities Act was

enacted, which reads in part: "The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operating, maintenance, use and protection of each crossing of one railroad by another railroad, . . . and to require, where in its judgment it would be practicable, a separation of grades at any such crossing heretofore or hereafter established and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the construction, alteration, relocation or abolition of such crossings or the separation of such grades shall be divided."

Subdivision (c) of the same section of the Public Utilities Act provides: "The commission shall have power in accordance with the procedure provided in this subsection to fix the just compensation to be paid for property or any interest in or to property to be taken or damaged in the separation of grades at any crossing specified in subsection (b) hereof, or for property or any interest in or to property to be taken or damages in the construction, alteration or relocation, under the order or with the approval of the commission, . . . and upon the payment of the just compensation so fixed to make a final order of condemnation as hereinafter provided."

From the foregoing enactments of law it seems clear that where the mere acquiring of an easement for one railroad track to cross the right of way of another railroad is involved, which amounts to the taking of an interest only in the property of a public utility as distinguished from the property of a priviate individual, the Railroad Commission has jurisdiction to hear the proceeding for condemnation, and grant or deny the application, determine the location and fix the terms and conditions incident to the proposed crossing, award the compensation to be paid for the taking of the property of a public utility and make and enter the final order of condemnation therefor.

*Chase Lumber Co.* v. *Railroad Com.*, 212 Cal. 691, 706 [300 Pac. 12, 18], upon which the respondent relies, does hold that: "The Railroad Commission has no power to make or direct the execution of any order under . . . sections 22, 23 and 23a of Article XII of the State Constitution or of section 43a of the Public Utilities Act, which shall either

by its terms provide for or by the execution thereof effectuate the taking or damage *of the private property of private persons* otherwise than under the provisions of Section 14 of Article I of the State Constitution, or which shall provide for or effectuate the taking or damage of such private property without compensation."

In the Chase Lumber Company case, which was decided by a divided court, the property of private individuals was directly affected by the proposed crossing of a city street by a railroad track. In granting the petition for a writ of prohibition which was instituted by private owners of private property adjacent to the proposed crossing, the court appears to have carefully limited the jurisdiction of the court in such eminent domain proceedings to the taking or damaging of "private property of private persons". Upon the contrary, it will be observed that section 23a of article XII of the Constitution confers jurisdiction upon the Railroad Commission to award compensation "for the taking of any property of a public utility". This provision is declared to be plenary and unlimited by any other provision of the Constitution. If the language of the Chase Lumber Company case is enlarged to apply to the taking of all property of public utilities as well as the property of private persons, then the last-mentioned section of the Constitution is meaningless and ineffectual for any purpose.

Regardless of whether the Railroad Commission is possessed of jurisdiction to condemn an easement for one railroad track to cross the right of way of another railroad and award the compensation therefor, it still remains true that the commission has the exclusive power to determine the location and fix the terms and conditions of the proposed crossing. We are of the opinion this action on the part of the commission should become a prerequisite to the maintenance of an action in a state court to condemn an easement for one railroad track to cross the right of way of another railroad.

The impossibility of appraising damages prior to the determination of the location, terms and conditions upon which a railroad was authorized to cross a public street was recognized in *In re West 134th Street,* 204 N. Y. 465 [97 N. E. 862, 864], where it was said: "It is important that the commissioners of estimate and assessment should be

advised in advance of the nature and character of the interests of the railroad company to be taken in order to determine the damages that should be awarded to it. If the street is to cross under or above the railroad tracks, a very different question may be presented from that where the street is to cross the tracks at grade. If they cross at grade, the easement of the railroad company in the operation of its trains may be more seriously affected than by an under or over crossing. The power to determine this question was then vested in the board of railroad commissioners, now in the public service commission, and in our view the statute contemplated the determination of that question by that commission before the city should proceed to appraise the property interests of the railroad corporation and acquire title for the crossing.''

The foregoing language seems very appropriate to the situation in the present proceeding, provided the court retains any jurisdiction of the condemnation suit whatever under the circumstances which are here presented.

Under a Missouri statute similar to the Public Utilities Act of California, in the case of *City of Kirksville* v. *Hines*, 285 Mo. 233 [225 S. W. 950], it was determined that a city could not condemn land for a street to cross a railroad track until the Public Service Commission had first determined the location of the crossing and the terms and conditions thereof. The court there said: ''The petition does not allege that such parcel of land is the *locus* of the particular point of crossing of the crossing of defendants' railroad by the proposed street extension as determined by the public service commission. If a municipality has no authority to determine the place of the crossing of a railroad by a street that it proposes to open or extend, obviously it cannot appropriate land for such a crossing unless and until the situs is determined by the tribunal invested with the power so to do. Such prior determination is therefore a condition precedent to the right to condemn. As it nowhere appears from the petition that the land therein described and which is sought to be condemned is at a place that has been determined upon and fixed by the public service commission as the point of crossing of the railroad by the proposed street extension, the petition does not state a cause of action.''

The complaint in eminent domain which is involved in the present proceeding failed to state that the Railroad Commission had authorized the proposed crossing or designated its location. The complaint therefore failed to state a cause of action. The superior court is without jurisdiction to try the eminent domain cause.

The writ of prohibition is granted as prayed for. The court is directed to dismiss the action.

Plummer, J., and Thompson (R. L.), J., concurred.