**STATE ex rel. DONIPHAN TELEPHONE COMPANY, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of Missouri, Respondent.**

No. 49617.

Supreme Court of Missouri,

Division No. 1.

July 8, 1963.

Motion for Rehearing and to Transfer to Court En Banc Denied July 22, 1963.

Forrest C. Donnell, St. Louis, for Doniphan Telephone Co.

J. B. Schnapp, of Schnapp & Cooper, Fredericktown, for Roscoe Myers and forty eight petitioners.

Glenn D. Evans, General Counsel, Thomas J. Downey, Asst. General Counsel, Missouri Public Service Commission, for respondent.

HOLMAN, Judge.

This is an appeal from a judgment of the Circuit Court of Cole County which affirmed certain orders of the Public Service Commission of Missouri (hereinafter referred to as the "Commission") relating to the matter of providing telephone service in an area consisting of the south three miles of Madison County, Missouri, hereinafter referred to as the "Three-Mile Strip." The orders provided that the service should be furnished by Southwestern Bell Telephone Company (hereinafter referred to as "Bell"). The Doniphan Telephone Company (hereinafter referred to as "Doniphan") appealed to the circuit court, and has appealed to this court from that court's judgment of affirmance.

On July 1, 1951, the Commission granted a Certificate of Convenience and Necessity to Doniphan to engage in rendering telephone service, among other places, to the town of Greenville and the territory adjacent thereto. In 1957, Doniphan made a visual survey of the three-mile strip and on November 21, 1957, filed a map with the Commission whereby it purported to add the three-mile strip to the area served by the Greenville exchange. Doniphan has never furnished any service to the three-mile strip, nor has it offered to furnish service, and the nearest line it has to this strip is 19 miles away.

This proceeding was commenced on January 4, 1960, by the filing with the Commission of a petition by W. R. Meyers and forty-eight other residents of the three-mile strip in which they stated that they had no telephone service, and desired that such service be furnished by the Fredericktown exchange of Bell because most of their business was transacted in Fredericktown. Doniphan and Bell were notified of the filing of this petition and the matter was set for formal hearing, at which both of said companies appeared and participated. The evidence of the petitioners at the hearing tended to prove that Fredericktown was the county seat of the county in which they resided; that substantially all of their business was transacted there; that they obtained medical and ambulance service, as well as fire protection and law enforcement protection from Fredericktown, and that they did not desire to be served by Doniphan because, in that event, every call to Fredericktown would be a long distance call. It was also shown that Bell had lines running to within 100 yards of the three-mile strip and was furnishing service to the three-mile strip by means of five pay stations located therein and connected with its Flat River exchange; that Bell has a cable circuit located about four miles from the three-mile strip which contains 50 pairs of wire which are not in use and are connected with the Fredericktown exchange.

It was the contention of Doniphan before the Commission, and is here, that the filing of the map on November 21, 1957, extended its certificate of convenience and necessity to include the three-mile strip; that it has pending before the Federal Communications Commission a petition seeking to have that Commission require Bell and American Telephone and Telegraph Company to make certain physical connections which would enable it to put into effect what is referred to as its Comprehensive Plan; that it also has made application to the Rural Electrification Administration for a $1,000,000 loan; that if the order is obtained from the Federal Communications Commission, and the loan is obtained from the Rural Electrification Administration, it proposes to increase its exchanges from six to twelve and construct an additional 250 miles of line; and in that event, at some future time, would

furnish service to the residents of the three-mile strip; that such service would not be furnished from the Greenville exchange but from a new exchange to be established in the one-store village of Clubb. Doniphan's president testified that the Company would be very reluctant to furnish telephone service to petitioners under existing rules and conditions because "it would be a losing proposition to us at the very best" and would be a heavy burden upon the subscribers who would be required to make large construction contributions.

Bell opposed the petitioners' application at the hearings before the Commission but did not appeal from the Commission's order.

The Commission entered a preliminary order on August 10, 1960, in which Bell was directed to make a survey of the area referred to as the three-mile strip "to determine the number of people who would actually become subscribers to their service under their current extension rules and to determine, in general, the feasibility of rendering service to such subscribers," and to report such findings to the Commission "on or before the 14th day of October, 1960."

Thereafter, on February 20, 1961, another hearing was held and a supplemental order entered on May 19, 1961, which was, in part, as follows: "That the Southwestern Bell Telephone Company be and is hereby directed to make use of its present unused facilities located along Highway 67, or in the Marquand area, in the southern part of Madison County and provide facilities in connection therewith to render telephone service to the Complainants therein located in the Three-Mile Strip and furnish toll and Fredericktown Exchange service to said Complainants under the same conditions and rates that are now in effect throughout the Fredericktown Rural Exchange area."

The Commission filed a motion to transfer this cause to the Kansas City Court of Appeals and that motion was ordered taken with the case. Doniphan, in its jurisdictional statement, says we have jurisdiction because of certain constitutional questions it has raised. Art. 5, § 3, Constitution of Missouri 1945, V.A.M.S., states that the "supreme court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state * * *."

■ Doniphan's first constitutional contention is that by its order directing Bell to furnish telephone service to the residents of the three-mile strip, the Commission deprived Doniphan of its property without due process of law and denied it the equal protection of the law in violation of the *Fourteenth Amendment to the Constitution* of the United States, and in violation of §§ 2 and 10 of Art. 1 of the Constitution of Missouri. We have decided that this contention may be determined without a *construction* of any of the constitutional provisions cited. In that connection it should be noted that Doniphan does not complain that it did not have notice of the proceeding or that it was deprived of an opportunity to be heard. Doniphan was present at every hearing and makes no complaint concerning the procedure before the Commission or in the circuit court. Moreover, no attack is made as to the constitutionality or validity of the statutes which provide the jurisdiction and powers of the Commission in a case of this kind. Doniphan simply says that by its order directing Bell to infringe upon its alleged territory the Commission has deprived Doniphan of its property without due process or equal protection of the law.

■ For the purposes of this opinion we will assume (but do not decide) that Doniphan had a certificate of convenience to furnish telephone service to the three-mile strip. Such a certificate, however, would not necessarily entitle it to a monopoly in that area. "The question of whether regulated monopoly or regulated competition will best serve the public convenience

and necessity in a particular area at any time is for the commission to decide, subject to the qualification that the commission must not act arbitrarily or unreasonably, * * *." State ex rel. City of Sikeston v. Public Service Commission of Missouri, 336 Mo. 985, 82 S.W.2d 105, 110.

Since Doniphan does not complain of any procedural matter affecting due process, and makes no attack upon the validity or constitutionality of the statutes defining the powers of the Commission in this type of case, the only conceivable complaint remaining within the scope of the instant contention is that the Commission exceeded its authority. What Doniphan is really saying is that the Commission did not have the power or authority to make the orders it made. It is not necessary to construe any constitutional provision in order to determine that contention. It may be decided by a construction of the applicable statutes for the purpose of ascertaining whether the Commission exceeded its authority in making the orders. "The commission is not a court. It is a creature of the Legislature. Its jurisdiction, powers, and duties are fixed by the statute. The constitutionality of such statute is not attacked. Since the jurisdiction of the commission is fixed by statute, and since the validity of that statute is not attacked, the case may be properly determined by a construction of the statute for the purpose of determining whether or not the commission exceeded its statutory authority. The Court of Appeals has authority to construe the statute for that purpose." State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission, 338 Mo. 572, 92 S.W.2d 882, 884. See also State ex rel. Harline v. Public Service Commission, Mo. Sup., 332 S.W.2d 940.

█ The next point mentioned in the jurisdictional statement is that the orders in this case take or damage Doniphan's private property for public use without just compensation in violation of Art. 1, § 26 of our constitution, which reads, in part, as follows: "That private property shall not be taken or damaged for public use without just compensation." We do not think this contention requires a construction of the quoted provision. In that connection we observe that Doniphan has not, at any stage of the proceeding, contended that it should recover compensation from Bell and that Bell did not seek (in fact, opposed) the right to furnish service in the three-mile strip. "The Public Service Commission is not invested with the power of eminent domain and cannot subject private property to public use. City of Kirksville v. Hines, 285 Mo. 233, 225 S.W. 950; Richards v. Public Service Commission, 293 Mo. 625, 239 S.W. 838. The commission 'has no power to declare or enforce any principle of law or equity' (State ex rel. Jenkins v. Brown, 323 Mo. 382, 19 S.W.2d 484) and as a result it cannot determine damages or award pecuniary relief." American Petroleum Exchange v. Public Service Commission, Mo.Sup., 172 S.W.2d 952, 955. We have also said that "[t]he just compensation clause of the Constitution contemplates a lawful taking of private property for public use." Elkins-Swyers Office Equipment Co. v. Moniteau County, 357 Mo. 448, 209 S.W.2d 127, 131. It would therefore appear that the alleged taking of Doniphan's private property for public use as a result of the instant orders of the Commission does not create a situation which would call for an application of the provisions of Art. 1, § 26.

█ There is another reason why it is not necessary to construe the provision in question. The Public Service Commission Law is based upon the police power of the state. State ex rel. Missouri Southern R. Co. v. Public Service Commission of Missouri, 259 Mo. 704, 168 S.W. 1156. It has long been settled by this court that a valid exercise of the police power is not a taking of private property for public use within the meaning of Art. 1, § 26, supra. See cases cited in note 14, 1 V.A.M.S., p. 613. And this court will not take jurisdiction of a case upon the ground that a constitutional question is involved when

the question sought to be invoked has been settled by prior decisions of the supreme court. Swift & Company v. Doe, Mo.Sup., 311 S.W.2d 15.

■ The final constitutional point relied on to vest appellate jurisdiction in this court is rather difficult to understand so we here quote what is said in the argument portion of the brief concerning it: "The proceeding, petition in which was filed on December 31, 1958 with Federal Communications Commission, related to commerce among the states and to commerce with a foreign nation. The Three-Mile Strip was included in the territory covered by the Comprehensive Plan. Inasmuch as (a) the proceeding in Federal Communications Commission was instituted to require the establishment of certain physical connections which it was believed would permit and enable Doniphan Telephone Company to operate the Comprehensive Plan and (b) action, during the pending of said proceeding, by Missouri Public Service Commission which might threaten future income by Doniphan Telephone Company from its territory by introducing competition, and thus creating fear of introduction of further competition, in its territory could adversely affect the prospects of Doniphan Telephone Company in said proceeding before Federal Communications Commission, it follows that Missouri Public Service Commission," in making the orders herein, "acted contrary to, and without recognition of, the power of the Congress under Section 8 of Article I of the Constitution of the United States to regulate commerce with foreign nations and among the several states and regulated, restricted, obstructed, burdened, impeded and interfered with interstate and foreign commerce." No cases are cited in support of that contention.

We see nothing in this point which would call for a construction of the interstate commerce clause of the United States Constitution. No question concerning interstate commerce was directly involved in this proceeding. The fact that the decision of the Commission herein *might* adversely affect Doniphan's chance of prevailing in another proceeding pending in another forum is of doubtful relevancy on this appeal. However, even if we assume that the interstate commerce clause should be considered, and perhaps applied, in determining this point, we see nothing presented which would call for a construction thereof.

Since no point is raised which would require a construction of a constitutional provision, and since it does not appear that there is any other basis for vesting jurisdiction in this court, we rule that the supreme court is without appellate jurisdiction of this cause and the motion to transfer is accordingly sustained.

This case is therefore transferred to the Kansas City Court of Appeals.

All concur.