[Sac. Nos. 6043, 6044. In Bank. Nov. 22, 1949.]

NORTHWESTERN PACIFIC RAILROAD COMPANY, Petitioner, v. SUPERIOR COURT OF HUMBOLDT COUNTY et al., Respondents; CITY OF EUREKA, Real Party in Interest.

Huber & Goodwin, Robert L. Pierce, R. S. Myers and E. J. Foulds for Petitioner.

Everett C. McKeage, as Amicus Curiae on behalf of Petitioner.

Frank J. Thompson, City Attorney, and Arthur W. Hill, Jr., for Respondents.

Holloway Jones, Jack M. Howard, Joseph F. De Martini and Paul L. Porterfield, as Amici Curiae on behalf of Respondents.

EDMONDS, J.—Upon the filing of a condemnation suit to obtain land for the proposed extension of a street, the city of Eureka obtained an ex parte order allowing it to "take immediate possession of the real property . . . and . . . immediately remove all obstacles and structures from said land and construct a street thereon. . . ." Following the denial of several motions to rescind or to vacate that order and the overruling of the railroad's demurrer to the complaint, this court granted a writ of review and also issued an alternative

writ of prohibition to restrain further proceedings until the question of the jurisdiction of the superior court to entertain the action is determined.

The complaint of the city, after reciting the pertinent resolution of its city council and alleging public interest and necessity, states that "the right of way sought to be condemned herein involves the removal and relocation of certain railroad spur tracks of the defendant corporation. . . ." The railroad company takes the position that the Public Utilities Commission has exclusive, or at least original or primary jurisdiction, to determine whether there shall be an abandonment, removal, or relocation of railroad facilities. Until such an administrative determination has been made, the railroad contends, the superior court does not have jurisdiction to entertain a suit in eminent domain for the accomplishment of that purpose. Although the order authorizing the taking of immediate possession of the railroad property is stated in language broad enough to allow the removal of tracks, the city's statement in open court that it would take no such action was noted by the trial court in denying the railroad company's motions. However, the complaint states the ultimate necessity of "removal and relocation" of the spur track, and therefore, if the Public Utilities Commission has exclusive or primary jurisdiction, the superior court had no jurisdiction to issue its order.

Article XII, section 22, of the California Constitution, authorizes the Legislature to confer powers upon the commission relating to public utilities "unlimited by any provision of this Constitution." Section 43(b) of the Public Utilities Act [Stats. 1915, p. 115, 2 Deering's Gen. Laws, Act 6386] states: ". . . [t]he commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing . . . of a street by a railroad or vice versa . . . and to alter, relocate or abolish by physical closing any such heretofore or hereafter established." General order No. 36-B issued by the commission pursuant to section 15 of the act provides that "no railroad corporation shall abandon or remove any depot, platform, siding, spur or other facility except upon thirty (30) days' notice to the public and to the Commission." It is argued by the petitioner that these enactments give exclusive jurisdiction to the commission to make the primary determination of public

necessity and convenience where the question at issue concerns the installation of a crossing over railroad tracks or the relocation of any of its facilities.

The city, which has operated under a freeholder's charter since 1895, relies upon section 23 of article XII of the Constitution, which declares that "this section shall not affect such powers of control over public utilities as relate to the making and enforcement of local, police, sanitary and other regulations, other than the fixing of rates, vested in any . . . incorporated city or town. . . ." It is argued that the extension of a street is a municipal affair within the vested power retained by the city and its charter, which antedates both the quoted provision of the Constitution and the Public Utilities Act. Supporting this contention are several decisions which have sustained, as involving municipal affairs, proceedings to condemn rights of way across existing railroad tracks for the purpose of extending streets. (*City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 323, 327 [159 P. 1169] [involving a crossing]; *City of Oakland* v. *Schenck*, 197 Cal. 456 [241 P. 545] [concurrent longitudinal rights of way].)

The railroad challenges the contention that the charter powers of the city bring it within the cited cases, inasmuch as it was not until three years after adoption of the Public Utilities Act that the city charter was amended to give general control over "municipal affairs." There is no necessity, however, to determine this point. It may be assumed for the purposes of this decision that the city has vested powers over municipal affairs within the rule of the Central Trust Company case. The controlling question here is whether the street extension planned by the city of Eureka transcends municipal authority and is properly a matter of statewide concern.

In the Central Trust Company case and in *City of Oakland* v. *Schenck, supra,* the condemnation and use of the right of way for street purposes involved no disturbance or alteration of existing railroad facilities. It is clear that "if the change in the street does not interfere with the operation and use of the railroad at the time, the commission cannot prevent the change and it may be made without the consent of the commission. *But if it does interfere, either at the time or afterward,* whether by natural causes, or lack of repair of the street as changed, or by reason of changes in the construction or use of the railroad subsequently directed or approved by the commission, the city must conform to the orders of

the commission so as to avoid such interference.'' (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441, 454 [166 P. 351].) In other words, although the city may have control over municipal affairs under its charter and thereby have the right to bring a condemnation action to obtain a crossing of a railroad, it is only entitled to such relief where the crossing may be constructed without disturbing the public use and enjoyment of the utility. If the proposed crossing, whether lateral or longitudinal, would substantially interfere with the use of the facilities of the utility, then the matter becomes one of statewide concern, rather than a ''municipal affair'' and the commission has exclusive jurisdiction to make the primary determination of the necessity and advisability of the change.

The complaint in the present case clearly states that removal and relocation of the tracks constitutes an essential part of the relief sought. There is no allegation that approval of the commission has been obtained for such relocation. Orderly procedure and justice indicate that the approval of the Public Utilities Commission should precede exercise of jurisdiction by the court in a condemnation action requiring relocation of tracks. (*Great Northern Ry. Co.* v. *Superior Court*, 126 Cal.App. 575, 576, 579 [14 P.2d 899].)

This requirement does not take from the superior court its fundamental jurisdiction over the subject matter of an eminent domain proceeding. But where such jurisdiction is sought to be exercised in such a manner as to affect substantially the operation of a railroad, it may only be exercised after there has been an administrative approval of the change in use of the railroad's facilities. An order of the superior court taking from a public utility property being used by it for the service of the public, in the absence of any showing of prior approval by the commission, is one which is in excess of jurisdiction as that term is used in determining the right of a litigant to a writ of prohibition or review. (See *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)

The facts of this case clearly show that the petitioner has no other plain, speedy and adequate remedy. Although the nonappealability of an order does not make the remedy inadequate, if an appeal from the final judgment will protect the rights of the parties, the city of Eureka is now authorized to take possession of the railroad property. Moreover, section 1254 of the Code of Civil Procedure provides that the plain-

tiff may take possession and make use of the premises during the pendency of an appeal from the judgment in an eminent domain proceeding. Accordingly, before a final determination on appeal, the street could be established, and the tracks removed. The result of such action necessarily would be the loss of use of freight facilities by the carrier and the public for a considerable period of time. In these circumstances, it cannot be said that the remedy by appeal is either speedy or adequate.

The order of possession is annulled and a writ of prohibition will issue prohibiting the respondent court from further proceedings until approval of the proposed relocation of tracks has been obtained from the Public Utilities Commission.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Real Party in Interest's petition for a rehearing was denied December 22, 1949.