[Civ. No. 744. Fifth Dist. Sept. 1, 1967.]

THE PEOPLE ex rel. PUBLIC UTILITIES COMMISSION, Plaintiff and Appellant, v. CITY OF FRESNO et al., Defendants and Respondents.

78

Mary Moran Pajalich and John C. Gilman for Plaintiff and Appellant.

Lerrigo, Thuesen & Thomson and Maurice E. Smith as Amici Curiae on behalf of Plaintiff and Appellant.

Robert H. Baida, City Attorney, Spencer Thomas, Jr., and James W. Shumar, Assistant City Attorneys, Alan D. Davidson and David M. Kennedy, Deputy City Attorneys, and

Crossland, Crossland, Richardson & Coswell for Defendants and Respondents.

GARGANO, J.—Appellant instituted this action to set aside a final judgment of condemnation acquired by respondent City of Fresno against the Bowen Land Company, Inc., a public utility company. Respondents filed general demurrers to the complaint, which were sustained by the trial court (Judge Thompson) with leave to amend. Appellant, however, elected to rest on its complaint, and after it failed to amend, respondents' motion for a dismissal of the complaint was granted by the court (Judge Meyers). Appellant appeals from the judgment of dismissal.

Since appellant elected not to amend its complaint, a strict construction of the pleadings is required, and we must assume that it pleaded as strong a case as it could (*Vaughn* v. *Certified Life Ins. Co.*, 238 Cal.App.2d 177 [47 Cal.Rptr. 619]). Accordingly, the facts are essentially as follows: The Bowen Land Company, Inc., hereinafter referred to as the water company, was engaged in the business of furnishing water to consumers residing in a service area located in substantial part outside of the boundaries of the City of Fresno. In July of 1965 the company agreed to sell its entire water system and related facilities to the City of Fresno, hereafter referred to as respondent, for the purchase price of $25,000. A joint application was filed by the parties with the Public Utilities Commission of the State of California, hereafter referred to as the commission, pursuant to Public Utilities Code section 851, seeking commission approval of the sale. In September of 1965 the commission stated that the proposed agreement of sale between the water company and respondent did not protect the water company's consumers; but it approved the sale (to take effect one year thereafter) subject to certain conditions, including a promise by respondent that it would not discriminate against consumers of the water system who lived outside of the City of Fresno. However, instead of accepting the conditions imposed by the commission, respondent instituted an action in the Superior Court of Fresno County to condemn the water company's system, alleging in its complaint that the fair market value thereof was $25,000. The water company then filed an answer admitting that the fair market value of its water system was as alleged by respondent in its complaint. Accordingly, the trial court entered judgment on the

pleadings in favor of respondent, and it is this judgment that appellant seeks to set aside.

Appellant admits that the superior court is the only tribunal with jurisdiction to entertain an action instituted by a public entity (such as a city) to condemn property belonging to a public utility company. It also admits that, if the amount of compensation to be paid for the property to be condemned is the only dispute between the parties, the superior court is the only tribunal with authority to decide the issue. Appellant contends, however, that the superior court may not enter a final unconditional judgment transferring title to such property to the condemnor until and unless the commission has granted its approval under section 851 of the Public Utilities Code, and that if the court does, it exceeds its authority and the judgment is void . This section reads in part as follows: "No public utility . . . shall sell, lease, assign, mortgage, or otherwise dispose of or encumber the whole or any part of its railroad, street railroad, line, plant, system, or other property necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, directly or indirectly, merge or consolidate its railroad, street railroad, line, plant, system, or other property, or franchises or permits or any part thereof, with any other public utility, without first having secured from the commission an order authorizing it so to do. Every such sale, lease assignment, mortgage, disposition, encumbrance, merger, or consolidation made other than in accordance with the order of the commision authorizing it is void." Accordingly, appellant concludes that its complaint alleged sufficient facts to state a cause of action for the relief requested and that the court erred in sustaining respondent's general demurrer.

Admittedly, the commission fulfills a vital and significant role in the scheme of government. In fact, it is the only public agency which is constitutionally constructed to protect the public from the consequences of monopoly in public service industries (*California Motor Transport Co. v. Railroad Com.,* 30 Cal.2d 184 [180 P.2d 912]; *Sale v. Railroad Com.,* 15 Cal.2d 612 [104 P.2d 38]). However, the primary function of the commission is to regulate private property dedicated to a public use and to exercise control over private companies engaged in public service (Cal. Const., art. XII, § 23; *California Water & Tel. Co. v. Public Utilities Com.,* 51 Cal.2d

478 [334 P.2d 887]). Moreover, as a regulatory body of constitutional origin it has only such powers as it derives from the Constitution and from the Legislature (Cal. Const., art. XII, § 23; *Television Transmission, Inc.* v. *Public Utilities Com.*, 47 Cal.2d 82 [301 P.2d 862]; *Northwestern Pac. R.R. Co.* v. *Superior Court*, 34 Cal.2d 454 [211 P.2d 571]). Thus, in the absence of specific legislation to the contrary, the commission has no jurisdiction to regulate public districts or municipalities (*Los Angeles Met. Transit Authority* v. *Public Utilities Com.*, 52 Cal.2d 655 [343 P.2d 913]).

On the other hand, the power of eminent domain which is inherent in government is regulated solely by the Legislature.[1] In fact, Code of Civil Procedure section 1237 reads as follows: "Eminent domain is the right of the people or government to take property for public use. *This right may be exercised in the manner provided in this title.*" [Italics added.] Consequently, the city's power to condemn property for a city use emanates from the Legislature, and we must look to the legislative enactments in order to determine the extent or limitation of this power.

Under Code of Civil Procedure section 1240 it is clear that a city may, by condemnation, take property already appropriated to a public use if the public use to which it is to be applied is a more necessary public use.[2] Moreover, under

---

[1]The California Constitution places no restrictions on the power of the state, cities, counties or public districts to condemn property owned by a public utility company and already appropriated to public use (see art. XII, § 23). Section 23 of article XII simply authorizes the Legislature to confer upon the Public Utilities Commission the power and jurisdiction to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings (see Pub. Util. Code, §§ 1401-1421).

[2]Code of Civil Procedure section 1240 reads, in part: "The private property which may be taken under this title includes:

". . .

"3. Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated; provided, that where any such property has been so appropriated by any individual, firm or private corporation, the use thereof for a State highway or a public street or highway of the State, or a county, city and county, or incorporated city or town, joint highway district, or the use thereof by the State or a county, city and county, incorporated city or town, joint highway district, or irrigation or municipal water district for the same public purpose to which it has been so appropriated, or for any other public purpose, shall be deemed more necessary uses than the public use to which such property has already been appropriated;. . .

". . .

"5. Franchises for any public utility, and all kinds of property of any nature whatsoever used, either during the existence of or at the termina-

Code of Civil Procedure section 1241 a city is expressly authorized to condemn property belonging to a public utility already dedicated to public use. In addition, the proposed city use is deemed a "more necessary public use" as a matter of law.[3] It is therefore manifest that the crucial question is whether Public Utilities Code section 851 regulates the otherwise unrestricted power of the city to condemn public utility property under Code of Civil Procedure section 1241 by requiring the consent of the commission before the superior court may enter a final judgment of condemnation. We conclude that the answer to this crucial question is in the negative for at least three basic and salient reasons.

(1) First and foremost, the plain language of section 851 itself indicates that it was designed to regulate the actions of a public utility in its own dealings with property which has been appropriated to public use and is affected by the public interest. However, it contains no express language which purports to control or affect a public entity which is exercising its own separate, distinct, and independent power to acquire property for a public use through the exercise of the power of eminent domain. The section simply provides that "no public utility (meaning a private company or individual) shall sell, lease, assign, mortgage, or otherwise dispose of or encumber (meaning by its own action whether voluntary or involuntary) the whole or any part of its . . . property necessary or useful in the performance of its duties to the public (recognizing the public character of the property) . . . without first having secured from the commission an order authorizing it so to do."

 It is a cardinal rule that a court is not justified in ignoring the plain words of a statute unless it clearly appears that the language used is contrary to what, beyond question, was the intent of the Legislature (*Twaits* v. *State Board of Equalization*, 93 Cal.App.2d 796 [210 P.2d 40]). As

tion of said franchise, to supply and furnish the service of such public utility, but such franchise or property shall not be taken except for a more necessary public use."

[3]Code of Civil Procedure section 1241 provides, in part: "Before property can be taken, it must appear:

" . . . .

"3. If already appropriated to some public use, that the public use of which it is to be applied is a more necessary public use; provided, that where such property has been so appropriated by any individual, firm or private corporation the use thereof for a public street or highway of the State, a county, city and county, or any incorporated city or town,

we have stated, the main function of the commission, as contemplated by the Constitution, is to regulate private companies or individuals engaged in public service, in order to prevent monopolies which would jeopardize the public interest. As we have also stated, the commission's jurisdiction to do so does not extend to public agencies engaged in similar public service unless the Legislature has so provided. Hence, although it is clear that Public Utilities Code section 851 was enacted by the Legislature to implement the commission's powers with regard to its normal constitutional function, it is not clear that the Legislature also intended to regulate, restrict or hamper public agencies which are exercising the right of eminent domain. To the contrary, eminent domain is an attribute of sovereignty and must not be restricted by judicial interpretation in the absence of a clear legislative intent to so restrict.

The cases cited by appellant in support of its position that section 851 applies to involuntary as well as voluntary transfers of public utility property are clearly distinguishable. For example, in *Napa Valley Elec. Co.* v. *Calistoga Elec. Co.*, 38 Cal.App. 477 [176 P. 699], the court simply held that commission approval is a condition precedent to a judgment of specific performance of a contract of sale of public utility property. Obviously, if a contract made by a public utility company to sell its property requires commission consent before it is effective, it cannot be enforced by a court of equity in the absence of commission approval.

*Hosford* v. *Henry*, 107 Cal.App.2d 765 [238 P.2d 91], was an action to reform a trust deed on public utility property which had not been approved by the Public Utilities Commisson, in order to include after acquired property. Once again the appellate court simply held that the trial court could not do by reformation what the parties could not do directly.

In *Slater* v. *Shell Oil Co.*, 39 Cal.App.2d 535 [103 P.2d 1043], the court stated that even if it is conceded that a public utility company may dissolve without the consent of

or joint highway district, or the use thereof by the State, a county, city and county, or any incorporated city or town, or joint highway district, or a municipal water district or an irrigation district, a transit district, a rapid transit district, a public utility district, or a water district for the same purposes to which it has been appropriated or for any public purpose, shall be deemed a more necessary use than the public use to which such property has been already appropriated; . . .''

the commission, a transfer of its property to shareholders requires the consent of the commission.

(2) Section 851 deals with the disposition of public utility property in general, and does not precisely mention the taking of such property by a public entity through the exercise of the power of eminent domain. To the contrary, the section is equivocal in this latter respect and, at best, an interpretation requiring commission approval of eminent domain proceedings would have to be based on very weak inferences. On the other hand, Code of Civil Procedure section 1241 is specific; it *unequivocally* empowers a city to condemn public utility property even though it has already been appropriated to a public use. Hence, it is self-evident that any ambiguity or uncertainty which may otherwise exist under Public Utilities Code section 851 is dispelled by Code of Civil Procedure section 1241, and the specific provision of this section is controlling. It is the rule that a specific provision of a statute controls a general provision (*Hartford Acc. etc. Co.* v. *City of Tulare,* 30 Cal.2d 832 [186 P.2d 121]; *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]).

■ (3) It is fundamental that a statute should be given reasonable interpretation in accordance with the apparent purpose and intention of the lawmakers (*County of Alameda* v. *Kuchel,* 32 Cal.2d 193 [195 P.2d 17]). ■ Accordingly, we believe that when all of the legislative enactments on the subject are carefully considered and reconciled the conclusion is inescapable that the Legislature did not and could not have intended to include a public entity's power of eminent domain within the mandatory requirement of Public Utilities Code section 851.

Under Public Utilities Code sections 10001, et seq., a city is expressly authorized to operate a public utility (including a water system), both inside and outside of its boundaries, without regulation or supervision by the commission. It seems somewhat inconsistent (and even incongruous) to assert that the Legislature *must* have intended commission approval as a prerequisite to judicial disposition of public utility property in an eminent domain proceeding, in order to protect the public utility's consumers who reside outside of the city's boundaries from rate discrimination, when it deliberately empowered a city to operate a public utility both within and outside of its boundaries without commission supervision or regulation of any kind, thereby making it possible for the city to discriminate in rates as appellant fears could happen.

Moreover, under Public Utilities Code sections 1401-1421, the commission is authorized to determine the just compensation payable by a public entity for public utility owned property which it seeks to acquire through eminent domain *if it is invited to do so by the condemnor.* Although these sections are not determinative of the present inquiry, they nevertheless demonstrate that the Legislature intended to involve the commission in a condemnation proceeding only with the consent of the condemnor, and then only on the limited question of ''just compensation.'' That this is the case is also evidenced by section 1421 which reads: ''The procedure provided in this chapter shall be alternative and cumulative and not exclusive, and the political subdivision shall continue to have the right to pursue any other procedure providing for the acquisition under eminent domain proceedings of the lands, property, and rights of any public utility. This chapter shall not be construed as repealing any law of this State providing for such eminent domain proceedings.''

Finally, under Code of Civil Procedure section 1241, the Legislature has expressly stated that when public utility property already appropriated to public use is condemned by a city, the contemplated city use is ''the more necessary public use'' as a matter of law. It would be paradoxical to also hold that the commission must give its approval before a final judgment of condemnation may be entered by the superior court. In other words, if Public Utilities Code section 851 is construed to require commission consent before public utility property can be condemned by a city, then Code of Civil Procedure section 1241 is amended by implication for it delegates to the commission the authority to determine under what conditions ''the more necessary public use'' may be exercised by the city. It is the well established rule, requiring no citation of authority, that repeals by implication are not favored and must be avoided if possible.

Having completed our own analysis of the problem, we are now ready to consider the appellant's remaining contentions and authorities. Appellant relies on *Northwestern Pac. R.R. Co.* v. *Superior Court,* 34 Cal.2d 454, 458 [211 P.2d 571], wherein the court stated: ''An order of the superior court taking from a public utility property being used by it for the service of the public, in the absence of any showing of prior approval by the commission, is one which is in excess of jurisdiction. . . .'' That case, however, is distinguishable

both on the facts and the law. There the city sought to condemn a railroad crossing in order to remove and relocate it as a part of a street expansion program. Hence, the city was not attempting to condemn public utility owned property in order to appropriate it to the same use. It was attempting to condemn a small portion of the railroad property which conceivably could have substantially interfered with the operation of the railroad. Moreover, in holding that the approval of the commission was a necessary requisite to the acquisition, the Supreme Court strongly relied on section 43(b) (now Pub. Util. Code, § 1202) of the Public Utilities Act (Stats. 1915, p. 115), which gave the commission the exclusive power over the location, installation, etc. of railroad crossings. In this connection, the court stated: "Article XII, section 22, of the California Constitution, authorizes the Legislature to confer powers upon the commission relating to public utilities 'unlimited by any provision of this Constitution.' Section 43(b) of the Public Utilities Act [Stats. 1915, p. 115, 2 Deering's Gen. Laws, Act 6386] states: '. . . [t]he commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing . . . of a street by a railroad or vice versa . . . and to alter, relocate or abolish by physical closing any such heretofore or hereafter established.' General order No. 36-B issued by the commission pursuant to section 15 of the act provides that 'no railroad corporation shall abandon or remove any depot, platform, siding, spur or other facility except upon thirty (30) days' notice to the public and to the Commission.' " (*Northwestern Pac. R.R. Co.* v. *Superior Court,* 34 Cal.2d 454, 456 [211 P.2d 571].) Accordingly, the court held that since the Legislature had expressly delegated to the commission the exclusive control of railroad crossings, its consent was necessary before any relocation could be effectuated by condemnation or otherwise. Significantly, the court did not discuss or even mention section 51 (now incorporated into Public Utilities Code section 851 in substantially similar language) which required the Railroad Commission's consent before railroad property could be sold, leased or encumbered.

▇▇▇▇ Appellant's next contention (based on its second cause of action) is that even if commission authorization is not a necessary condition precedent to the judicial disposition of public utility property in an eminent domain proceeding,

nevertheless the commission is an indispensable party to the action, entitled to be heard in order to protect the interests of the public utility's consumers. We do not, however, agree with this novel contention.

■ In the absence of fraud or abuse of discretion by the condemnor, the only function of the superior court in a condemnation action, when the public use (or the greater public use) is deemed to exist as a matter of law, is to determine the just compensation which must be paid by the condemnor for the property taken. ■ Thus, if commission authorization is not required under Public Utilities Code sections 1401-1421, it is manifest that the commission has no standing in the action and is not entitled to be heard either on its own behalf or on behalf of the consumers of the condemnee.

Moreover, the law is settled that the customers of a public utility company such as a water company do not have any interest in the property being taken in eminent domain and are not themselves entitled to intervene in the lawsuit (*City of Riverside* v. *Malloch,* 226 Cal.App.2d 204 [37 Cal.Rptr. 862]). Their only right is to continue to receive water, and this right is unaffected by the condemnation judgment but continues by operation of law (*Erwin* v. *Gage Canal Co.,* 226 Cal.App.2d 189 [37 Cal.Rptr. 901]). In fact, if the condemnor should arbitrarily refuse to furnish the water company's former customers with water, or if it should unfairly discriminate in rates, they could bring an action on their own behalf for appropriate relief (*Durant* v. *City of Beverly Hills,* 39 Cal.App.2d 133 [102 P.2d 759]). It is therefore difficult to understand on what basis the commission was entitled to represent the customers of the Bowen Land Company in the condemnation proceeding which was instituted by respondent, and why it can afford greater protection to their interests than a duly constituted court in the event of discrimination.

The case of *People* ex rel. *Public Util. Com.* v. *Ryerson,* 241 Cal.App.2d 115 [50 Cal.Rptr. 246], is distinguishable. First, *Ryerson* involved the rate fixing of carriers, an area in which the commission has exclusive jurisdiction. Second, it was a case where the public interest would remain completely unprotected in the absence of action by the commission; and third, the decision in *Ryerson* was predicated in part upon a showing of extrinsic fraud. None of these three characteristics have a counterpart in the instant case.

■ Appellant's final contention is that respondent's judgment of condemnation constitutes a reversal or collateral attack on the earlier decision of the commission. In other words, appellant apparently contends that once an application for the sale of public utility property to a city (or public entity) has been acted upon by the commission, the decision with respect to such application is binding on the city, and the city can no longer proceed to acquire the property through the exercise of its power of eminent domain.

This contention is also without merit. As we have concluded, Public Utilities Code section 851 is not a restriction against the city, nor does it prevent a city from exercising its right of eminent domain without the consent of the commission. Accordingly, if a city and a public utility are in agreement on the terms of a proposed sale (and until the sale is approved by the commission it is nothing more than a proposed sale), they may seek commission approval before resorting to condemnation. However, if the commission imposes terms or conditions not acceptable to the city, the proposed sale need not be consummated and the city may resort to other remedies prescribed by law. In other words, the jurisdiction of the commission in relation to a voluntary sale is exclusive. On the other hand, the jurisdiction of the superior court, though limited to an action in eminent domain, is also exclusive. Hence, the subsequent judgment of the superior court in a condemnation action cannot be classified as a collateral attack on the previous action of the commission which relates only to a proposed sale which was never consummated.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 22, 1967.