[Civ. No. 1791. Fifth Dist. June 4, 1973.]

COUNTY OF MADERA, Plaintiff and Respondent, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Respondent;
STEVE DUNCAN, Real Party in Interest and Appellant.

**COUNSEL**

Stephen J. Herzberg, Frank S. Bloch, Mary Louise Frampton, Mario Olmos and Stephen Leonard for Real Party in Interest and Appellant.

Roy E. Wolfe, County Counsel, and Donald K. Marshall, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—This cause concerns eligibility for benefits under the Aid to Families With Dependent Children Program (referred to as "AFDC").

Steve Duncan (referred to as "Duncan") at the time of the application for benefits was 17 years old, married, and his wife was pregnant. He was a senior enrolled as a full-time student at Chowchilla High School and expected to be graduated and receive his high school diploma in approximately June 1969.

As part of his full-time course of study at high school Duncan was en-

rolled in classes designed to prepare him for a career in carpentry. His prior work experience consisted generally of summer jobs during school vacations as a farm laborer and service station attendant.

On November 18, 1968, Duncan applied to the County of Madera for AFDC benefits. His application was denied. He then petitioned the Department of Social Welfare for a hearing (Welf. & Inst. Code, §§ 10950-10958).[1] The hearing officer made written findings and conclusions and filed his proposed decision denying Duncan's application. Thereafter, pursuant to section 10959, the Director of the Department of Social Welfare (referred to as the "Director") rendered his "Alternate Decision" reversing the county and the hearing officer and ordering the application to be granted. Pursuant to section 10962 and Code of Civil Procedure section 1094.5, the county petitioned the superior court for review of the "Alternate Decision" of the Director. The superior court filed findings and conclusions and a judgment ordering the Director to set aside his "Alternate Decision" and to deny the application of Duncan. Duncan appealed from that judgment.[2]

In an administrative mandamus proceeding to review a decision of the Director denying welfare benefits, the trial court and this court apply the substantial evidence rule. Both the trial court and this court look to the record to ascertain if there is substantial evidence to support the administrative findings and if the decision is in conformance with law. (§ 10962; Code Civ. Proc., § 1094.5; *Taylor* v. *Martin* (1972) 28 Cal.App.3d 1057, 1059 [105 Cal.Rptr. 211]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) "Our scope of review on appeal from such a judgment is identical to that of the trial court." (*Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 149.)

After taking evidence, the hearing officer made findings of fact based upon that evidence. No evidence was taken by the Director prior to rendering his "Alternate Decision," and the Director adopted the hearing officer's findings of fact verbatim.[3] The crucial findings determinative of this appeal

---

[1] All references to code sections, unless otherwise indicated, will be to the Welfare and Institutions Code.

[2] Duncan actually noticed his appeal from the trial court's order denying his motion to "set aside and vacate judgment and enter another and different judgment," which is nonappealable. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 91 (a), pp. 4098-4099.) We treat the notice as an appeal from the judgment.

[3] Indeed, it appears the Director had only the hearing officer's findings, conclusions and opinion before him. The proceedings before the hearing officer were transcribed on approximately August 28, 1970, and filed in Madera County on September 10, 1970. The Director's "Alternate Decision" was on July 23, 1970. Without any evidence before him, the Director would be hard put to make any additional findings of fact.

are: "Claimant has worked part time for the past six years in farm labor and has some experience as a service station attendant.

"Claimant's attendance at high school results from his voluntary choice to attend school rather than seek full-time employment at the present time. Claimant's high school courses can enable him to learn skills which would assist him to become a carpenter.

"Claimant's work experience establishes that he is capable of engaging in gainful occupations other than carpentry.

"Claimant is neither available for nor seeking full-time employment and is in full-time, regular attendance at high school."

There is substantial evidence in the record made before the hearing officer to support these findings. ■■ Our review, therefore, is limited to the question of law, that is, whether under the facts found to be true Duncan was legally entitled to AFDC payments.

The issue is to be determined solely by the interpretation of statutes and departmental regulations, not in conflict with the statutes, issued at the state level. (§ 11209; *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 694 [94 Cal.Rptr. 421, 484 P.2d 93].)

Under the statutory scheme, aid is to be granted to a family "because they have been deprived of parental support or care due to: . . . (c) [t]he unemployment of a parent or parents." (§ 11250, subd. (c).)

The key question, therefore, is whether Duncan was an "unemployed parent" as defined in section 11201. That section in pertinent part reads: "For the purposes of this chapter, 'unemployed parent' means a natural parent, adoptive parent, or stepparent with whom the child is living, and who:

"(a) Is not working but is available for and seeking employment or, as a result of unemployment, has been accepted for or is participating in a training project essential to future self-support, . . ."

■■ Whatever may be thought of the wisdom or policy of the enactment, the meaning of the statute appears to be plain, clear and unambiguous on its face, thus eliminating the necessity for construction. "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].) We find nothing in the legislative history or on the face of the statute that would justify ignoring the plain meaning of the language used in section 11201. The court can-

not ignore the plain words of the statute unless it appears the words used were, beyond question, contrary to what was intended by the Legislature. (*People* ex rel. *Pub. Util. Com.* v. *City of Fresno* (1967) 254 Cal.App.2d 76, 82 [62 Cal.Rptr. 79].) "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.] Certainly the court is not at liberty to seek hidden meanings not suggested by the statute or by the available extrinsic aids." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1].) In giving effect to the canon of literal construction, we must interpret a statute according to the usual and ordinary import of the language employed in framing it. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)

While there is an express statutory provision exhorting a liberal construction of the public assistance program (§ 11000),[4] the liberal interpretation to be accorded to the act should not exceed the limits of the statutory intent (*California Emp. Com.* v. *Kovacevich* (1946) 27 Cal.2d 546, 549-550 [165 P.2d 917].)

█ Applying the facts found by the Director to the plain meaning of the statute, it is apparent that Duncan did not meet the definition of an "unemployed parent." He was not "available for and seeking employment" as he was, according to the factual finding, "in full-time, regular attendance at high school." For two reasons he did not fall within the alternate statutory defintion of unemployed parent, which states: "as a result of unemployment [he] has been accepted for or is participating in a training project essential to future self-support." The Director specifically found that he was not attending high school as the "result of unemployment" but by "voluntary choice . . . rather than seek full-time employment at the present time," and, secondly, because the court found that "Claimant's work experience establishes that he is capable of engaging in gainful occupations other than carpentry." Thus his attendance at high school was not "essential to future self-support. . . ."

It is not the function of the court to place a judicial gloss upon a statute under the facade of "construction" when the statute itself is clear on its face and is susceptible to only one meaning. In the face of these factual findings by the Director and the evident meaning of the statutory provision, Duncan cannot be found to be eligible without distorting, if not ignoring,

---

[4]Section 11000 provides: "The provisions of law relating to a public assistance program shall be liberally construed to effect the stated objects and purposes of the program."

the usual and ordinary meaning of the statutory language, in violation of the principles we have set forth.

Based on the explicit findings of fact, the Director's conclusion of law and decision would authorize AFDC assistance to a parent who voluntarily quit a job which furnished support to his family in an effort to improve his position and income by attending school full time. While it is laudable to improve one's education, employability, position and income, there is nothing in the act which authorizes aid to dependent children under such circumstances unless the applicant is first found to be unemployed within the definition contained in section 11201. A necessary prerequisite to a conclusion that a parent who is attending school is an unemployed parent is a finding of fact that the schooling is indispensable to his future self-support. The findings herein were to the contrary.

Duncan and the Director rely upon section 10001, subdivision (b),[5] and section 11205.[6]

■ The general commendable purpose of public social services declared in section 10001, subdivision (b), cannot be held to qualify the specific definition of "unemployed parent" contained in section 11201. It is a cardinal rule of interpretation that the specific provisions of a statute control the general provisions. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505]; *People* ex rel. *Pub Util. Com.* v. *City of Fresno, supra,* 254 Cal.App.2d 76, 80-81.)

Section 11205, dealing with the purpose of the AFDC program, is expressly conditional upon a finding that the aid to a child is related to dependency caused by circumstances defined in section 11250 and, as we have pointed out, one of these circumstances is a finding of the unemployment of a parent as defined in section 11201. Moreover, section 11205

---

[5]Section 10001, subdivision (b), provides:
"The purposes of the public social services for which state grants-in-aid are made to counties are:
". . . . . . . . . . . . . .
"(b) To provide timely and appropriate services to assist individuals develop or use whatever capacity they can maintain or achieve for self-care or self-support."

[6]Section 11205 provides:
"It is the object and purpose of this chapter to provide aid for children whose dependency is caused by circumstances defined in Sections 11250 . . . .
"Those engaged in the administration of aid under this chapter are responsible to the community for its effective, humane, and economical administration.
". . . The employment and self-maintenance of parents of needy children shall be encouraged to the maximum extent and that this chapter shall be administered in such a way that needy children and their parents will be encouraged and inspired to assist in their own maintenance. The State Department of Social Welfare and the State Department of Health shall take all steps necessary to implement this section."

states that the employment and self-maintenance of parents shall be encouraged to the maximum extent. The findings and conclusions of the hearing officer and the superior court that Duncan was capable of engaging in gainful, self-supporting occupations other than carpentry and therefore was not entitled to aid when he voluntarily did not engage in such occupations but instead went to school are not inconsistent with that declared purpose.

Duncan relies upon section 11303.[7] He argues that the language of section 11308.6, subdivision (b)(4), brings him within the definition of a parent who "Is not working but is available for and seeking employment" contained in section 11201, subdivision (a). He argues that though he was not working and was not literally available for and seeking employment, he had good cause for refusal of employment because it would have been unreasonable to interrupt his high school program in process, designed to improve his prospects for self-support. There is no merit to this argument. First, section 11308.6 is under article 3, "Work Incentive Programs" (W.I.N.), not under article 2, entitled "Eligibility for Aid," which contains the provisions dealing with the AFDC program. Secondly, the operative sections of article 3, including 11308.6, are not applicable until it has first been established that there is an "unemployed parent" as defined in section 11201 under article 1, entitled "General Provisions."

In the face of the findings of fact, the conclusions of law and the order of the Director are not supported by the findings and are contrary to law.

 At the oral argument, with permission of the court, Duncan argued that the superior court lacked jurisdiciton to entertain this action. The argument is succinctly stated in two paragraphs of a letter submitted by Duncan's counsel at the hearing. That letter states:

---

[7]Section 11303 in the form relied upon by Duncan was added by Statutes 1965, chapter 1784, page 4010, and was repealed effective August 15, 1968, by Statutes 1968, chapter 1369, page 2608. The wording of section 11303 since August 15, 1968, is inapposite to the question here involved. By Statutes 1971, chapter 1779, page 3839, section 11308.6 was added to the Welfare and Institutions Code; it contains some of the same language as former section 11303. That section in part reads: "(b) Good cause for refusal of employment shall be deemed to exist when: . . . (4) Acceptance would be unreasonable because it would interrupt a program in process for permanent rehabilitation or self-support or conflict with an imminent likelihood of reemployment at the person's regular work."

Thus between August 1968 and March 4, 1972, there does not appear to have been any statutory provision containing the language relied upon by Duncan and the Director, though the application for aid, the referee's decision and the Director's decision all occurred during this period. Nevertheless, since similar arguments may be raised in the future under section 11308.6, we dispose of the issue in the interest of settling the question.

"1. 45 C.F.R. Section 205.10(a)(15) states, in part, that fair hearing decisions 'shall be binding on the state and local agencies.' Therefore, California Welfare and Institutions Code § 10962 is inconsistent with Federal law to the extent it allows judicial review of fair hearing decisions by local agencies.

"2. Allowing judicial review by local agencies would frustrate the requirements outlined in 42 U.S.C. § 602(a)(1) and 602(a)(3) to the effect that AFDC must be enforced uniformly by a single state agency. Those sections state, in part, that an AFDC State plan must 'provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be manditory [sic] upon them; (and) either provide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan; . . .' . . . A final fair hearing decision rendered by the State Department of Social Welfare cannot be challenged locally in Superior Court actions, and at the same time remain part of a single and uniform system of administration."

■ However, Duncan's counsel admits, as he must, that a participant in an administrative hearing has a constitutional right to judicial review of the administrative determination, at least insofar as it extends to reviewing questions of law and whether or not the evidence supports the findings of fact. (*St. Joseph Stock Yards Co.* v. *United States* (1936) 298 U.S. 38, 52 [80 L.Ed. 1033, 1041, 56 S.Ct. 720, 726]; *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457]; 2 Cal.Jur.3d, Administrative Law, §§ 253, 254, pp. 496-498.) Because the review herein is limited to determining whether there is substantial evidence to support the findings and to questions of law (§ 10962; Code Civ. Proc., § 1094.5; *Taylor* v. *Martin, supra,* 28 Cal.App.3d 1057), no problem for solution would appear to be presented. Further, any conflict and lack of uniformity among the various lower courts is ultimately corrected by an appellate decision of the Court of Appeal or, if the conflict is among the various districts, by a decision of the Supreme Court. ■ In our view this does not conflict with the federal regulations and statutes cited requiring the public assistance provisions of federal law to be administered by a single state agency and that the fair hearing decisions of the state agency be binding on local agencies.

The judgment is affirmed.

Gargano, J., and Franson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 1, 1973.