985 F.2d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PACIFIC POWER AND LIGHT COMPANY, an assumed business name
for the electric operations portion of Pacificorp,
a Maine corporation, Plaintiff-Appellant,
v.
SURPRISE VALLEY ELECTRIFICATION CORPORATION, a California
corporation; Duanne McGarva; John Erquiaga; Wesley Cook;
Cyril Mammoth; Ray Cloud; George Jaska; and John Withers,
in their official capacities as members of the Board of
Directors of Surprise Valley Electrification Corporation;
Dan Silveria, in his official capacity as general manager of
Surprise Valley Electrification Corporation; The City of
Alturas, California, an incorporated municipality; Roger
Dorris, in his official capacity as mayor of the City of
Alturas and member of the Alturas City Council; Charles
Johnson, Jim Porter, Danny Parker, and Beth Swift, in their
official capacities as members of the Alturas City Council,
Defendants-Appellees.
CITY OF ALTURAS, a municipal corporation,
Plaintiff/Counterdefendant/Appellee,
v.
PACIFIC POWER & LIGHT COMPANY, an assumed business name of
PacifiCorp, an Oregon corporation,
Defendant/Counterclaimant/Appellant,
v.
SURPRISE VALLEY ELECTRIFICATION CORPORATION, a California
corporation, Counterdefendant/Appellee.
PACIFIC POWER AND LIGHT COMPANY, an assumed business name
for the electric operations portion of Pacificorp,
a Maine corporation, Plaintiff-Appellee,
v.
SURPRISE VALLEY ELECTRIFICATION CORPORATION, a California
corporation; et al., Defendants,
and
City of Alturas, California, an incorporated municipality,
Defendant-Appellant.
CITY OF ALTURAS, a municipal corporation,
Plaintiff/Counterdefendant/Appellant,
v.
PACIFIC POWER & LIGHT COMPANY, an assumed business name of
PacifiCorp, an Oregon corporation,
Defendant/Counterclaimant/Appellee.
 Nos. 89-15524, 89-15713 and 89-16010.
 United States Court of Appeals, Ninth Circuit.
 Argued--Submission Deferred Nov. 6, 1990.
Resubmitted Jan. 19, 1993.
Decided Jan. 25, 1993.
 
 Appeal from the United States District Court for the Eastern District of California; No. CV-89-0020-MDC, M.D. Crocker, District Judge, Presiding.
 E.D.Cal.
 VACATED AND REMANDED.
 Before ALARCON, BRUNETTI and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In a diversity action for injunctive relief, Pacific Power & Light Company ("Pacific") appeals a judgment of condemnation entered against it in favor of the City of Alturas ("the City"), and the denial of injunctive relief requested against the City and Surprise Valley Electrification Corporation ("Surprise Valley"). The City cross-appeals the district court's award of attorney and expert fees to Pacific. We consider in this appeal: whether, when a public entity attempts to condemn public utility property for public use, and plans to achieve that public use through the participation of a third party public utility, whose participation requires approval of the California Public Utilities Commission, there can be a valid public use enunciated prior to the Public Utilities Commission's granting of approval. We have jurisdiction pursuant to 28 U.S.C. § 1291, and now vacate and remand the district court's judgment of condemnation.
 
 I.
 
 3
 Appellant Pacific is an investor-owned public utility incorporated in Oregon. Appellee City is a municipal corporation located in the state of California. Appellee Surprise Valley is a nonprofit electrical distribution corporation organized to distribute electricity to its member-consumers. Pacific currently owns and operates the electrical distribution system serving the City and its surrounding areas.
 
 
 4
 In 1985, the City began investigating the feasibility of using its eminent domain powers to condemn Pacific's facilities and have them operated by Surprise Valley. Pacific filed an action seeking injunctive relief against Surprise Valley in the Eastern District of California in September 1986. A similar action was filed against the City in January 1987. The City filed a condemnation action against Pacific in February 1987 in the Modoc County Superior Court; the case was removed to the district court on the basis of diversity. Pacific's claims for injunctive relief were consolidated with the condemnation action.
 
 
 5
 On February 2, 1989, Pacific filed a complaint with the California Public Utilities Commission ("PUC") seeking an order restraining Surprise Valley from acquiring control over, operating or maintaining the facilities then owned by Pacific. On August 10, 1989, the PUC filed an order requiring Surprise Valley to file an application for PUC consent.
 
 
 6
 At trial in February 1989, the district court determined that the City had the right to exercise its powers of eminent domain over Pacific's property, and denied Pacific's request for injunctive relief. A jury was impaneled to determine the proper valuation of the property, and awarded Pacific $6,000,000 as just compensation.
 
 
 7
 The district court entered final judgment in the case on March 27, 1989, and corrected that judgment on May 1, 1989. Pacific timely appealed both judgments.
 
 
 8
 Pacific sought attorney's fees and expert fees for costs incurred with respect to property which was later dismissed from the action. Pacific also sought expert fees relating to the calculation of severance damages to be incurred by Pacific due to the City's retention of "underbuild."[1] Pacific claims that it did not know that the City intended to retain the underbuild until its cost analysis was complete, and that a new analysis was therefore required.
 
 
 9
 On June 28, 1989, the district court entered a supplemental judgment awarding Pacific attorneys fees in the sum of $30,398.65, and expert witness fees in the sum of $37,123.75. The City filed a timely notice of appeal from that judgment on July 10.
 
 II.
 
 10
 The exercise of eminent domain under California law requires that the condemnation be for a public use, that the body condemning the property be authorized to do so, and that the property to be condemned be necessary to carry out a project required by public interest or necessity. See Cal.Civ.P.Code §§ 1240.010-1240.030. We consider these requirements in slightly different order.
 
 
 11
 The City has statutory authority to condemn property for use as a public utility. "The legislative body may acquire private property by condemnation or otherwise when it is necessary to take or damage such property for: ... (f) any other purposes authorized by law." Cal.Gov't Code § 40404 (emphasis added). "Any municipal corporation may acquire, construct, own, operate, or lease any public utility." Cal.Pub.Util.Code § 10002.
 
 
 12
 Pacific argues that there is no statutory authority for the City's plan to condemn Pacific's property and then transfer that property to Surprise Valley. [Blue Brief at 14] However, in Hawaii Housing Authority v. Midkiff, 467 U.S. 229 (1984), the Supreme Court held that the fact that property condemned by the state was transferred directly to private owners did not defeat the public use. "The Court long ago rejected any literal requirement that condemned property be put into use for the general public.... [G]overnment does not itself have to use property to legitimate the taking; it is only the taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause." Id. at 244. Therefore, though no statutory authority for a "condemn and transfer" plan exists under California law, such a plan is an acceptable use of the City's powers of eminent domain.
 
 
 13
 We next consider whether Pacific's property was necessary to achieve the stated public use (see infra ). The acquisition of property already appropriated as a public use requires a determination that the new use is a more necessary one.
 
 
 14
 Any person authorized to acquire property for a particular use by eminent domain may exercise the power of eminent domain to acquire for that use property appropriated to public use if the use for which the property is sought to be taken is a more necessary public use than the use to which the property is appropriated. Where property is sought to be acquired pursuant to this section, the complaint, and the resolution of necessity if one is required, shall refer specifically to this section.
 
 
 15
 Cal.Civ.P.Code § 1240.610 (emphasis added).
 
 
 16
 The use of Pacific's facilities by the City is by statute a more necessary public use. "Where property has been appropriated to public use by any person other than a public entity, the use thereof by a public entity for the same use ... is a more necessary use...." Cal.Civ.P.Code § 1240.650(a); see also People v. City of Fresno, 254 Cal.App.2d 76, 62 Cal.Rptr. 79, 83 (1967) (city's use of privately owned public utility is more necessary use as a matter of law). Therefore, the condemnation of Pacific's property is a more necessary public use.
 
 
 17
 Pacific argues that the City has a higher burden of proving necessity for that portion of the condemned property located outside the city limits, which burden the City has not met. A Resolution of Necessity by a local public entity as to property not located entirely within the city limits is not conclusive, but does create a presumption affecting the burden of producing evidence. Cal.Civ.P.Code § 1245.250(b). This type of burden "require[s] the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." Cal.Evid.Code § 604. Thus, Pacific is in error in arguing that the City failed to meet its burden of proof. The burden at trial was, in fact, on Pacific to rebut the presumption of the correctness of the Resolution of Necessity. Pacific does not argue on appeal that it met this burden, and there is no evidence in the excerpts of record that such proof was attempted.
 
 
 18
 Finally, we consider whether a valid public use for the condemnation was presented. The public use advanced for this action was the desire to obtain lower power rates. [Finding of Fact No. 1.] The concept of public use has been broadly defined. "[T]he general statutory scheme would appear to afford cities considerable discretion in identifying and implementing public uses." City of Oakland v. Oakland Raiders, 32 Cal.3d 60, 70, 183 Cal.Rptr. 673, 679 (1982). In Midkiff, the Supreme Court examined a state statute to determine whether the statute, which took title in real property from lessors and transferred it to lessees in order to reduce the concentration of ownership of fee simple in Hawaii, constituted a permissible "public use." The Court held that the statute did not violate the Public Use Clause of the fifth and fourteenth amendments. 467 U.S. at 245. The Court, "would not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.' " Id. at 241 (quoting United States v. Gettysburg Electric Railway Co., 160 U.S. 668, 680 (1896)). "Where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the public use clause." Id. at 241. When the legislative body's purpose is legitimate and its means are not irrational, the Court has made it clear that clear that "empirical debates over the wisdom of takings--no less than debates over the wisdom of other kinds of socioeconomic legislation--are not to be carried out in the federal courts." Id. at 243.
 
 
 19
 Here, the City's condemnation was for the purpose of obtaining lower power rates for the community. The City, by resolution, found that "[t]he public use for which the property is to be taken is the furnishing to the residents of the areas served by said facilities of reasonably priced and affordable electrical energy." The City's purpose was legitimate, and its means to accomplish the purpose through the condemnation power were not irrational; deference to the City's judgment as to what public purposes should be advanced by the exercise of the takings power is required. Id. at 244. Accordingly, we hold that the condemnation of Pacific's property for the purpose of obtaining lower power rates for the community was a valid public use.
 
 
 20
 Pacific argues that the City never proved that lower power rates would be obtained if Pacific's property was condemned, and therefore, no public use can be proved, but does not cite any authority requiring proof that the designated public use will ever occur. For a taking to be for a public use, we do not consider whether the provision will in fact accomplish its objectives, but whether the legislative body rationally could have believed that the taking would promote its objectives. Id. at 242. In this case the City was not irrational in its belief that it could obtain lower power rates by the condemnation and transfer of the facilities to Surprise Valley.
 
 
 21
 Pacific alleges, however, that this public use cannot be realized by the City without the participation of Surprise Valley. Unlike the City, Surprise Valley is subject to the jurisdiction of the PUC. Our focus thus turns to the authority of the PUC in this case.
 
 III.
 
 22
 On February 2, 1989, Pacific filed a complaint with the PUC, seeking an order restraining Surprise Valley from acquiring control over, operating or maintaining the facilities then owned by Pacific. Trial on the City's action in eminent domain had already been set for February 14, 1989.
 
 
 23
 The ruling of the PUC Administrative Law Judge filed on August 10, 1989, gives Surprise Valley a period of time in which to "file an application with the Commission for authorization to acquire or control the public utility electric functions presently furnished by Pacific Power & Light Company (Pacific) in Modoc County, (which functions [the City] plans to acquire by eminent domain) and to expand [Surprise Valley's] service territory under an appropriate certificate of public convenience and necessity." Pacific Power & Light Co. v. Surprise Valley Elec. Corp., ALJ Ruling, attached as Exhibit "B" to the City's Petition for Writ of Mandate.
 
 
 24
 It is undisputed that Surprise Valley has not applied for or received PUC authority to operate Pacific's facilities. Pacific argues that the City should be prevented from condemning the facilities until Surprise Valley applies for and receives PUC approval under California Public Utilities Code §§ 854 and 1001. The City argues that Surprise Valley does not need such authorization to operate the facilities.
 
 
 25
 California Public Utilities Code § 854 provides as follows: "No person or corporation ... shall acquire or control either directly or indirectly any public utility organized and doing business in this state without first securing authorization to do so from the commission." (Emphasis added)
 
 
 26
 The PUC has no jurisdiction over municipally owned utilities unless specifically authorized by statute. See County of Inyo v. Public Utilities Comm., 26 Cal.3d 154, 166, 161 Cal.Rptr. 172, 179 (1980). Therefore, PUC approval of the proposed transfer of Pacific's facilities would not be required if the City were to operate the utility after condemnation. Here, PUC approval is necessary because the City plans to transfer the utility to Surprise Valley, either directly or indirectly. The City has repeatedly stated that it cannot and will not operate the utility on its own.
 
 
 27
 We reject the City's argument that California Public Utilities Code § 854 does not apply to this case because Pacific is a foreign corporation, and § 854 applies only to public utilities that are "organized and doing business in this state." The purpose of PUC authority to approve a transfer of a public utility is to protect the interests of the public served by the utility. See 53 Cal.Jur.3d, Public Utilities § 76. If the authority of the PUC to protect the public could be thwarted by the simple act of incorporating in another state, the PUC would be unable to accomplish its mandate.
 
 
 28
 Further, although the language of the statute is in the conjunctive, a recent PUC case applied § 854 to a Maine corporation doing business as a public utility in California. See In re Pacificorp Maine d/b/a Pacific Power & Light, 96 P.U.R. 4th 404 (1988) (WESTLAW CA-PUR).[2]
 
 
 29
 The Agreement between the City and Surprise Valley regarding transfer of operating control of the facilities does not propose that Surprise Valley "acquire or control" the facilities to be condemned. Rather, the Agreement proposes that Surprise Valley "operate and maintain" the facilities after the City takes the property through eminent domain. [Agreement p I, attached as Exhibit B to Affidavit of Charles Hinkle] Thus, on its face the Agreement would not bring the "condemn and transfer" plan within the purview of § 854. However, the Agreement also proposes that Surprise Valley loan the City the money to acquire the facilities from Pacific and hold a mortgage on the facilities. [Agreement p M] Because Surprise Valley will receive indirect control of the facilities through the Agreement, PUC approval under § 854 is necessary.
 
 
 30
 California Public Utilities Code § 1001 also precludes Surprise Valley's operation of the facilities without PUC approval. Section 1001 provides, "No ... electrical corporation ... shall begin the construction ... of a line, plant, or system, or of any extension thereof, without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction."
 
 
 31
 The City and Surprise Valley argue that § 1001 does not apply because the statute "is on its face limited to construction of new extensions and is therefore inapplicable to the facts of this case." [Appellee's Red Brief at 35] We reject this argument, however, because the PUC has repeatedly applied § 1001 in cases involving activities other than physical construction. See, e.g., In re: Pacific Bell, 1990 WL 482308, 1990 Cal. PUC LEXIS 681, * 40 (utilities required to file for approval of service extension under § 1001); In re: Linkatel, Inc., 1989 WL 406031, 1989 Cal. PUC LEXIS 605, * 1 (operation as reseller of telephone service subject to § 1001 approval); In re: Truckee-Donner Public Utility District, 21 CPUC2d 197, 1987 WL 245321, 1987 Cal. PUC LEXIS 739, * 14-15 (extension of public utility service area requires § 1001 approval); In re: Southern Pacific Communications Co., 1975 WL 22219 1975 Cal. PUC LEXIS 208: 7
8 CPUC 123 (rejecting petitioner's argument that § 1001 regulates construction but not operations as "invitation to partial deregulation and general confusion").
 
 
 32
 Surprise Valley cannot operate the facilities without receiving approval from the PUC. To this date, Surprise Valley has not applied for such approval. The City has conceded that it cannot or will not operate the facilities on its own. Thus, until such time as Surprise Valley receives PUC approval to operate the facilities, it is unclear whether the City would be able to achieve the desired public use--lower power rates.
 
 
 33
 Because the district court failed to consider the requirement of PUC approval in determining that the public use had been met, we vacate the judgment of condemnation, and remand the case to the district court to determine whether a valid public use exists in light of the lack of PUC approval for Surprise Valley's operation of the facilities.
 
 IV.
 
 34
 The City's cross-appeal alleges that the litigation expenses awarded to Pacific regarding the deleted facilities and the underbuild were not reasonably and necessarily incurred, or would have been incurred irrespective of the modification in the condemnation action.
 
 
 35
 Because we vacate the district court's decision as to the eminent domain claim and remand for further consideration of the effect of PUC jurisdiction, we also remand the issue of attorney and expert fees for further consideration by the district court.
 
 
 36
 VACATED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The term underbuild refers to distribution lines which are attached to transmission poles under transmission lines, rather than being attached to separate transmission poles. Because the City seeks to retain the underbuild attached to the facilities it is condemning, Pacific will incur severance damages in having to build new distribution lines for the facilities it is retaining
 
 
 [2]
 In this case, Pacificorp Maine (the same corporation which is the appellant in the case before us) sought PUC approval for a change in corporate structure under § 854. Before the change, Pacificorp was a corporation organized in Maine and doing business in a variety of states, including California. Utah Power & Light Company was apparently incorporated in Utah, and doing business in Utah, Idaho and Wyoming. The two corporations were merged into Pacificorp Oregon, a corporation incorporated in Oregon and doing business in all the states in which the two prior corporations operated
 If the City's theory about the restricted application of § 854 was correct, PUC approval of the change in structure would have been unnecessary, because neither corporation was incorporated and doing business in California.
 The change in structure of Pacific's parent company has no effect on the current litigation.